IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0863-05






LARRY MARTIN ELLISON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


MEDINA COUNTY





 Keasler, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Larry Martin Ellison pled guilty to sexual assault but chose to have a jury decide his
sentence. During punishment, a probation officer testified that Ellison was not a "suitable"
candidate for community supervision. The Court of Appeals held that the trial judge did not
abuse his discretion in admitting the testimony. (1) We affirm its judgment and hold that
suitability is a matter "relevant to sentencing" under Article 37.07, Section 3(a).

Facts and Procedural History

 Ellison pled guilty to sexually assaulting a thirteen-year-old girl and chose to have a
jury determine his punishment. During the punishment phase, the prosecutor called the
probation officer assigned to Ellison's case as a witness. After the officer described her
educational background, professional training, and personal experiences with Ellison's case,
the prosecutor asked, "In your training and education, with that background, were you able
to make some evaluation or prognosis regarding the defendant and his ability to serve a term
of probation?" Ellison objected to the question, arguing that the probation officer was not
qualified to give expert testimony. The trial judge overruled his objection and allowed the
probation officer to testify that, in her opinion, Ellison was not a suitable candidate for
probation.

 The jury sentenced Ellison to twenty years imprisonment, and Ellison appealed. The
Court of Appeals affirmed the trial judge's decision to admit the probation officer's
testimony, holding that it was not an abuse of discretion. (2) In doing so, the court observed
that the 1989 amendment to Article 37.07, Section 3(a) of the Texas Code of Criminal
Procedure considerably widened the scope of evidence admissible at punishment. (3) The court
further determined that the admissibility of evidence of suitability for probation is judged by
its relevancy to sentencing. (4)

 After the Court of Appeals denied Ellison's motion for rehearing, Ellison filed a
petition for discretionary review. He asserts a single ground for review: "The Court of
Appeals erred by holding that a probation officer may testify about a defendant's suitability
for probation." 

 In Ortiz v. State, we specifically declined to determine "whether 'suitability' for
probation is an issue under the current incarnation of [Article 37.07]." (5) We have now
granted review to decide that issue, and we hold that suitability is a matter "relevant to
sentencing" under the current version of Article 37.07, Section 3(a) when a defendant seeks
placement on community supervision under Article 42.12, Section 4 of the Texas Code of
Criminal Procedure. (6)

Law & Analysis

 Challenging the Court of Appeals's decision, Ellison argues that it is improper for a
probation officer to testify at punishment about a defendant's suitability for community
supervision because suitability is not an issue for the jury. He further asserts that this Court
has "soundly rejected the claim that a witness may recommend a particular punishment to the
jury" because it would lead to a "battle of the experts." The State responds that our cases
interpreting Article 37.07, Section 3(a) were superseded by the 1989 amendment. According
to the State, under the 1989 amendment, "there is no longer a prohibition against evidence
of a defendant's suitability for probation."

I.

 Unlike the guilt phase, "the question at punishment is not whether the defendant has
committed a crime, but instead, what sentence should be assessed." (7) The purpose of the
bifurcated trial procedure--first guilt and then sentencing--is to "take the blindfolds off the
judge or jury when it came to assessing punishment . . . thus allow[ing] evidence critical to
an enlightened determination of punishment . . . ." (8) Today we acknowledge that, by
amending Article 37.07, Section 3(a) to include evidence of "any matter the court deems
relevant to sentencing," the Legislature thereby allowed a jury to consider a wide range of
evidence in determining whether to recommend probation. 

 Article 42.12, Section 4 of the Texas Code of Criminal Procedure defines a jury's role
in recommending community supervision. (9) It states in pertinent part:

(a) A jury that imposes confinement as a punishment for an offense may
recommend to the judge that the judge suspend the imposition of the
sentence and place the defendant on community supervision. . . .


* * *

(e) A defendant is eligible for community supervision under this section
only if before the trial begins the defendant files a written sworn motion
with the judge that the defendant has not previously been convicted of
a felony in this or any other state, and the jury enters in the verdict a
finding that the information in the defendant's motion is true. (10)


 The jury, therefore, makes two determinations--(1) the truth or falsity of the
information in the defendant's motion, and (2) whether to recommend that the defendant be
placed on community supervision instead of serving a term of confinement. The second
determination is crucial to our holding today because it is that determination--whether to
recommend community supervision--to which we find "suitability" relevant.

 We reach this conclusion by examining two major areas. First, we consider our cases
interpreting Section 3(a) and its amendments. And second, we examine its plain language.

 Although the Code of Criminal Procedure does not define the term "relevant," we
recognized in Rogers v. State that Texas Rule of Evidence 401 is "helpful" to determine
relevancy under Section 3(a). (11) Rule 401 states that evidence is relevant if it has "any
tendency to make the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence." (12) But
punishment presents different issues from those at the guilt phase, and there are "no distinct
'facts . . . of consequence' that proffered evidence can be said to make more or less likely to
exist." (13) Relevancy in the punishment phase is "a question of what is helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular case." (14) 
Accordingly, the admissibility of evidence during "the punishment phase of a non-capital
trial is a function of policy rather than a question of logical relevance." (15)

 In Murphy v. State, decided more than ten years before Rogers, "[w]e effectively held
. . . that 'suitability' for probation is not an issue"; (16) therefore, testimony about suitability was
irrelevant. (17) At that time, Section 3(a)'s language read narrowly: "[E]vidence may be offered
by the state and the defendant as to the prior criminal record of the defendant, his general
reputation and his character." (18) We recognized that the problem with determining relevancy
at the punishment phase was in "defining what the particular 'issues' are that evidence may
or may not be 'relevant' to prove." (19) Although "the material issue during the punishment
phase is, obviously, what punishment to assess," we noted that "what punishment to assess"
simply did not offer much guidance in evaluating relevance. (20)

 Although we noted that punishment evidence is not "relevant" in the sense that it
makes some fact more or less probable, we explained that labeling evidence as "'relevant'
[at punishment] is really no more than to say we deem that information appropriate for the
factfinder to consider in exercise of its unfettered discretion to assess whatever punishment
within the prescribed range it sees fit." (21) 

 In Murphy, the State argued that evidence of the defendant's specific misconduct
should have been admitted as "'relevant' to the specific question of his 'suitability' for
probation, which became a material issue the moment he filed his sworn application [for
probation]." (22) That argument prompted this Court to consider whether the Legislature
intended that "suitability" for probation was a fact "of consequence" to the jury's decision
whether to recommend probation. (23) Section 3(a)--the guiding statute for admissibility of
evidence at punishment--did not specifically address "suitability." Moreover, Article 42.12
did not make suitability an issue for the jury's determination. We determined that suitability
was not an issue related to the jury's function at punishment and was, therefore, irrelevant. (24) 

 Of greatest importance to today's holding, however, was our acknowledgment in
Murphy that "[a jury's] sole function is to recommend . . . ." (25) This single statement
illustrates our fundamental rationale. While ordering the conditions of, and maintaining
supervision over, a defendant's probation are outside the jury's province, the jury's primary
duty is to recommend whether probation should be granted at all. 

 After our opinion on original submission in Murphy, but just before our opinion on
rehearing, the Legislature amended Section 3(a) (26) to say that a party may offer evidence "as
to any matter the court deems relevant to sentencing including but not limited to" the
defendant's prior criminal record, the defendant's general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he is being tried,
and even evidence of unadjudicated extraneous crimes or bad acts. (27)

 Our opinions following the 1989 amendment did not interpret the new language
because the cases we reviewed had been tried under its former version. For example, in Ortiz
v. State, we considered whether a psychiatrist's testimony that the defendant would not make
a suitable candidate for probation was admissible at punishment. (28) Ortiz, though handed
down in 1992, still interpreted former Section 3(a). (29)

 Nevertheless, we did not dismiss the idea that suitability might be an issue. We held
only that "testimony relevant to the trappings of probation may be excluded, within the trial
court's discretion, where it might precipitate a distracting inquiry into the relative merits of
probation versus incarceration." (30) We noted that our holding in Ortiz was "a far cry from
holding that psychiatric testimony focusing on so-called suitability for probation, where that
has been made an issue in the punishment phase of the case, will invariably be more
confusing or prejudicial than probative, as a matter of law." (31)

 We specifically recognized that our prior decisions merely upheld the exclusion of
such evidence: "None holds that the trial court has no discretion to admit such testimony,
should it find it is helpful to the jury, and that its probative value was not substantially
outweighed by unfair prejudice or confusion of the issues." We concluded that, under the
Rules of Evidence, "whether a 'battle of the experts' will more likely perplex than assist a
jury is a case-specific inquiry, to be conducted at the trial level and measured on appeal only
for abuse of discretion." (32) Moreover, we declined to comment on the 1989 amendment. (33)

 Just a few months later, we decided Grunsfeld v. State, which held that evidence of
unadjudicated extraneous offenses was inadmissible under Section 3(a)'s definition of "prior
criminal record." (34) This case did involve the amended statute; however, it considered the
special category of unadjudicated extraneous offenses rather than "suitability." But
significantly, we stated: "The 1989 amendment was a statutory recognition that evidence
other than prior criminal record, general reputation and character is admissible." (35)

 In 1993, the Legislature again amended the statute and specifically provided for the
admission of unadjudicated extraneous offenses, superseding our prior cases. (36) The
Legislature answered the questions we had addressed in Murphy and Grunsfeld. But the
status of "suitability" evidence remained unclear. The answer lies in the current language
of Section 3(a).

 Texas Code of Criminal Procedure Article 37.07, Section 3(a) governs the
admissibility of evidence during the punishment phase of a non-capital trial (37) and provides:

 [E]vidence may be offered by the state and the defendant as to any matter the
court deems relevant to sentencing including but not limited to the prior
criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he
is being tried, and notwithstanding Rules 404 and 405, Texas Rules of
Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime
or act. (38)

 When construing a statute, the starting point is always its plain language. (39) And we
look solely to that "language for its meaning unless its text is ambiguous or the application
of its plain language would lead to an absurd result that the Legislature could not have
possibly intended." (40) Section 3(a)'s language is not ambiguous. And although perhaps
broad, a plain-language application does not lead to absurd results that were unintended by
the Legislature.

 We first acknowledge a single word--"offered." The statutory language clearly states
that "evidence may be offered." But nothing in the statute requires that the evidence be
admitted if it is excludable under some other statute or rule. So a trial judge may evaluate
many pieces of evidence, but the judge need not admit every piece. This is particularly
important in jury sentencing. In assessing punishment, a trial judge may review a
presentence report, which often contains inadmissible information under the Rules of
Evidence. (41) There is no provision, however, for a jury to review a presentence report. A jury
must get all its information from properly admitted evidence at the punishment phase.

 Second, the plain language of Section 3(a) states that a party may offer evidence "as
to any matter the court deems relevant to sentencing including but not limited to" the
defendant's prior criminal record, the defendant's general reputation or character, an opinion
regarding the defendant's character, the circumstances of the offense for which the defendant
is being tried, and even evidence of unadjudicated extraneous crimes or bad acts. (42)

 The words "any matter" seemingly encompass unlimited types of information. And
Section 3(a) provides an inexhaustive list of evidence a party may offer. But the Legislature
included a key phrase--"as to any matter the court deems relevant to sentencing, including
. . . ." (43) So the only qualification the Legislature chose to place on "any matter" was that it
must be "relevant to sentencing." Four years later, the Legislature again amended the statute
and added the phrase "but not limited to." (44) Together, these amendments can only be
construed to significantly enlarge the categories of potentially admissible evidence at
punishment.

 A jury must be able to "tailor the sentence to the particular defendant." (45) The actions
by the Legislature in continually broadening Section 3(a)'s language and a plain reading of
that section persuade us to conclude that suitability is a matter "relevant to sentencing" under
the current version of Article 37.07, Section 3(a) when a defendant seeks community
supervision.

 Some may construe the admission of this type of evidence as heavily burdening the
defendant. This is simply not true. Under today's ruling, a defendant would also be allowed
to introduce the testimony of a probation officer whose opinion is that the defendant is, in
fact, suitable for community supervision. Today's decision gives equal opportunity to the
State and a defendant to put on testimony of the defendant's suitability for community
supervision.

 We also recognize that our holding may cause concern about potential "unfettered
discretion" now seemingly given to trial judges in determining what is "relevant to
sentencing." (46) But we specifically note that the trial judge must still restrict the admission
of evidence to that which is "relevant to sentencing"--in other words, a trial judge must
operate within the bounds of Texas Rules of Evidence 401, 402, and 403. We are also
confident that a jury will weigh the credibility of witnesses. Once the testimony is admitted,
the jury is free to assign the weight it will accord to any testimony. For instance, if the jury
determines that the testimony of a witness is unbelievable, it can disregard it.

 And should the Legislature again disagree with our interpretation of the plain
language of Section 3(a), it is certainly free to amend the statute. But until such time, we are
bound by Section 3(a)'s broad language. Today's holding furthers the policies inherent in
the punishment phase and will provide the jury with sufficient information so that it may
tailor an appropriate sentence for the defendant.

II.

 Having determined that a probation officer may give an opinion on a defendant's
suitability for probation, we now turn to the particular facts of this case and consider whether
the probation officer assigned to Ellison's case was qualified to give her opinion on Ellison's
suitability for probation.

 We use an abuse of discretion standard in reviewing a trial court's determination of
a witness's qualifications as an expert and judgment regarding the admission of any expert
testimony. (47) "Absent a clear abuse of that discretion, the trial court's decision to admit or
exclude testimony will not be disturbed. (48)

 In Osbourn v. State, we held that a police officer could testify as to her identification
of the smell of marijuana. (49) The particular facts in Osbourn required us to consider the
interplay between Rule 701 and Rule 702 witnesses. "Rule 701 covers the more traditional
witness--one who 'witnessed' or participated in the events about which he or she is
testifying--while Rule 702 allows for a witness who was brought in as an expert to testify." (50) 
Even if a witness testifies as an expert, "that would not preclude [the witness] from offering
a lay opinion about something [the witness] personally perceived." (51) "'A witness may
qualify to give testimony both under Rule 702--because of his or her superior experiential
capacity--and under Rule 701, if the witness's testimony and opinion are based upon
firsthand knowledge.'" (52) "When a witness who is capable of being qualified as an expert
testifies regarding events which he or she personally perceived, the evidence may be
admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." (53) 

 In this case, the probation officer testified: (1) she was employed by the 38th Judicial
District Community Supervision and Corrections Department; (2) her job duties included
supervising cases, doing intakes and doing presentence investigation reports; (3) she has a
degree in psychology with an emphasis on sex crimes and aggression; (4) she has a degree
in criminal justice; (5) she is a certified officer with the State of Texas; (6) she has had
special training in sex offender cases and supervising sex offenders; and (7) she has attended
several seminars and special training on violence, domestic violence, and sex offenders.

 But perhaps most importantly, the probation officer testified that she interviewed
Ellison while preparing her presentence investigation report. She also interviewed the
thirteen-year-old victim of the sexual assault. So the probation officer not only based her
testimony on her general professional knowledge and experience but also on her personal
knowledge and perceptions of Ellison and the complainant during their interviews.

 Under these facts, we cannot say that the trial judge abused his discretion in allowing
the probation officer to testify as to her opinion of Ellison's suitability for community
supervision.Conclusion and Judgment The Court of Appeals correctly held that the trial judge did not abuse his discretion
in admitting the opinion testimony of the probation officer during the punishment phase of
Ellison's trial. Therefore, we affirm the judgment of the Court of Appeals.


DATE DELIVERED: September 13, 2006

PUBLISH
1. Ellison v. State, 165 S.W.3d 774, 776 (Tex. App.--San Antonio 2005).
2. Id.
3. Id. at 775.
4. Id. at 776.
5. 834 S.W.2d 343, 346 n.7 (Tex. Crim. App. 1992).
6. Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a) (Vernon 2004 & Supp. 2005).
7. Haley v. State, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005) (citing Sunbury v.
State, 88 S.W.3d 229, 234 (Tex. Crim. App. 2002); Rogers v. State, 991 S.W.2d 263, 265
(Tex. Crim. App. 1999)).
8. Davis v. State, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998).
9. Tex. Crim. Proc. Code Ann. art. 42.12, § 4 (Vernon Supp. 2006). 
10. Id. at § 4(a), (e).
11. Rogers, 991 S.W.2d at 265.
12. Tex. R. Evid. 401.
13. Rogers, 991 S.W.2d at 265.
14. Id.
15. Sunbury, 88 S.W.3d at 233; Rogers, 991 S.W.2d at 265; Miller-El v. State, 782
S.W.2d 892, 895-96 (Tex. Crim. App. 1990); Murphy v. State, 777 S.W.2d 44, 63 (Tex.
Crim. App. 1989) (plurality opinion on rehearing).
16. Ortiz, 834 S.W.2d at 346 (quoting Murphy, 777 S.W.2d 64-67).
17. Murphy, 777 S.W.2d at 66. 
18. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a). Acts 1967, 60th Leg., R.S., ch.
659, § 22, 1967 Tex. Gen. Laws 1739, eff. Aug. 28, 1967.
19. Murphy, 777 S.W.2d at 62.
20. Id. (quoting Hoffert v. State, 623 S.W.2d 141, 145 (Tex. Crim. App. 1981)).
21. Murphy, 777 S.W.2d at 63.
22. Id.
23. Id.
24. Id. at 64-65.
25. Id. at 67.
26. Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04(a), 1989 Tex. Gen. Laws
3492 (effective Sept. 1, 1989).
27. Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a).
28. 834 S.W.2d 343, 344 (Tex. Crim. App. 1992).
29. Id. at 346 n.7.
30. Id. at 348.
31. Id.
32. Id.
33. Id. at 346 n.7.
34. Grunsfeld v. State, 843 S.W.2d 521, 526 (Tex. Crim. App. 1992).
35. Id. at 524.
36. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05(a), 1993 Tex. Gen. Laws
3759 (effective Sept. 1, 1993).
37. Sunbury, 88 S.W.3d at 233.
38. Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a).
39. Brown v. State, 943 S.W.2d 35, 36 (Tex. Crim. App. 1997); Boykin v. State, 818
S.W.2d 782, 785 (Tex. Crim. App. 1991).
40. Haley, 173 S.W.3d at 514 (citing Jaubert v. State, 74 S.W.3d 1, 2 (Tex. Crim.
App. 2002); Boykin, 818 S.W.2d at 785).
41. Tex. Crim. Proc. Code Ann. art. 37.07, § 3(d) ("When a judge assesses the
punishment, he may order an investigative report as contemplated in Section 9 of Article
42.12 of this code . . . ."); see also Tex. Crim. Proc. Code Ann. art. 42.12, § 9.
42. Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a).
43. Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04(a), 1989 Tex. Gen. Laws
3492 (effective Sept. 1, 1989).
44. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05(a), 1993 Tex. Gen. Laws
3759 (effective Sept. 1, 1993).
45. Rogers, 991 S.W.2d at 265. 
46. See, e.g., Beasley v. State, 902 S.W.2d 452, 460 (Tex. Crim. App. 1995)
(Clinton, J., concurring).
47. Lagrone v. State, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997) (citing McBride
v. State, 862 S.W.2d 600, 607-08 (Tex. Crim. App. 1993); Joiner v. State, 825 S.W.2d
701, 708 (Tex. Crim. App. 1992)).
48. Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).
49. 92 S.W.3d 531, 533 (Tex. Crim. App. 2002).
50. Id. at 535.
51. Id. at 539.
52. Id. (quoting Hulen D. Wendorf et al., Texas Rules of Evidence Manual, art.
VII-6-7 (6th ed. 2002)).
53. Id. at 536.