In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00426-CR


____________________



TRAVERS EARL CRUMPTON, Appellant



V.


 

THE STATE OF TEXAS, Appellee


 




On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. CR26914 






MEMORANDUM OPINION



 Travers Earl Crumpton appeals his conviction by a jury for evading arrest or detention
with a motor vehicle. After finding Crumpton to be an habitual offender, the jury assessed
punishment at fifteen years of confinement in the Texas Department of Criminal Justice and
a $10,000 fine. In two issues, Crumpton challenges the evidence as legally insufficient to
establish that Crumpton knew he was being arrested by the officer named in the indictment, 
and he contends the trial court erred in admitting evidence of an unadjudicated offense during
punishment. We affirm.

 In issue one, Crumpton contends the trial court erred in failing to grant Crumpton's
motion for instructed verdict. A challenge to the denial of a motion for instructed verdict is
actually an allegation of legal insufficiency. Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim.
App. 1993). We consider all of the evidence presented at trial by both the State and the
appellant. Id. A legal sufficiency review requires us to view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could find the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 "A person commits an offense if he intentionally flees from a person he knows is a
peace officer attempting lawfully to arrest or detain him." Tex. Pen. Code Ann. § 38.04(a)
(Vernon 2003). The degree of offense is greater "if the actor uses a vehicle while the actor
is in flight and the actor has not been previously convicted under this section[.]" Id.
§ 38.04(b)(1). The indictment alleged Crumpton "did then and there while using a vehicle,
intentionally flee from William Knox, a person the defendant knew was a peace officer who
was attempting lawfully to arrest or detain the defendant." On appeal, Crumpton argues the
evidence is insufficient because the State failed to prove that Crumpton "knew William
Knox, knew he was a peace officer, or knew he was fleeing from William Knox."

 The name of the complaining witness is not an "element of the offense" against which
constitutional sufficiency of the State's proof is judged. Fuller v. State, 73 S.W.3d 250, 252-53 (Tex. Crim. App. 2002). To be guilty of the offense, the jury did not need to find that
Crumpton fled from an officer he knew to be William Knox. See id. at 253. The evidence
adduced at trial establishes that Crumpton fled using a motor vehicle, that he knew he was
fleeing from a police officer, and that one of the officers Crumpton fled from was William
Knox.

 Several officers from the Liberty County Sheriff's Office went to a hotel during
daylight hours to serve an arrest warrant on Crumpton. One plainclothes officer sat in an
unmarked observation vehicle. The other deputies were in marked squad cars and were
wearing jackets with the word "Sheriff" marked conspicuously down their sleeves. Sergeant
Knox was in a marked patrol car on the street west of the hotel. Two Liberty police officers
were in a marked squad car and wore either a uniform or a jacket with the word "[p]olice"
emblazoned on it. The officers waited until Crumpton arrived in a vehicle and drove
underneath the hotel carport. Captain Fairchild drove up behind Crumpton and activated the
red and blue lights on his patrol car. The Liberty police officers got out of their vehicle and
yelled "[p]olice" as they approached Crumpton with their guns drawn. Fairchild exited his
vehicle and was yelling "[s]top" and "[p]olice." As they approached, Crumpton sped off in
his vehicle. Crumpton passed two feet away from Fairchild, and Crumpton looked at
Fairchild as Crumpton drove by. Crumpton drove eastbound down Highway 90 through
Dayton with Fairchild in pursuit in one vehicle and Knox in pursuit in another vehicle. Both
patrol vehicles had their lights and sirens activated. Knox was immediately behind Crumpton
as they drove down the highway. After sideswiping some vehicles and running through the
red lights, Crumpton drove at a high rate of speed through a turn, ran off the road, and
wrecked the vehicle. Knox was one of the officers who maintained pursuit until Crumpton
was apprehended. Knox was trying to arrest or detain Crumpton.

 Knox testified he pursued Crumpton at speeds as high as ninety miles per hour. His
emergency lights and siren were on during the pursuit. Knox testified that he was trying to
lawfully arrest or detain Crumpton and that Crumpton fled from him.

 Crumpton testified he thought he was being pursued by members of the Banditos
motorcycle gang and that he thought that were trying to kidnap or kill him in retaliation for
burning a truck. He claimed the officers did not have their emergency lights on. He testified
that he looked back and saw police officers and lights twenty yards before he wrecked the
vehicle and ran from the police. Crumpton admitted he ran because he was afraid of being
arrested. Crumpton knew he had a warrant out on him at the time.

 As the sole judge of the credibility of the witnesses and the weight to be given to the
testimony, the jury was free to reject Crumpton's claim that he did not knowingly evade
detention by the police officers while he was driving. See Tex. Code Crim. Proc. Ann. arts.
36.13 (Vernon 2007), 38.04 (Vernon 1979). Crumpton admitted he was evading detention
while he was driving. His only disclaimer was that he did not know his pursuers were trying
to arrest or detain him for a lawful purpose. The jury could believe the officers' testimony
that they identified themselves as police and that their lights and sirens were running as they
pursued Crumpton through Dayton. The jury could disbelieve Crumpton's testimony that he
did not notice the lights until shortly before he ran off of the road. Sergeant Knox was one
of the officers who pursued Crumpton. There is evidence from which the jury could find
beyond a reasonable doubt that, while using a motor vehicle, Crumpton knew he was evading
lawful detention or arrest by the officers following behind him with lights and sirens
activated, and that William Knox was one of the officers. The evidence is sufficient to
establish Crumpton's guilt for the offense of evading arrest or detention with a motor vehicle. 
We overrule issue one.

 In his second issue, Crumpton contends the trial court committed reversible error by
allowing the State to introduce evidence of an unadjudicated offense during the punishment
phase of the trial. Over defense counsel's objection that the evidence would be more
prejudicial than probative, a police officer testified that approximately one month before the
offense, he executed a traffic stop on Crumpton. When the officer advised Crumpton that
he was going to be handcuffed, Crumpton told the officer that he was not going to jail. 
Crumpton struggled with the officer and tried to reach the officer's holstered weapon. 
Crumpton avoided the officer's baton strike, then ran to his vehicle and drove away. The
officer pursued Crumpton with his lights and siren activated. Crumpton spun out, stopped, 
and exited the vehicle, then ran into the woods. The officer later identified Crumpton as the
person who evaded detention or arrest.

 On appeal, Crumpton argues the evidence that he evaded detention or arrest
approximately one month before he evaded arrest or detention in this case is "more
prejudicial than probative for the issue of evading arrest." The evidence was admitted at the
punishment phase, however, and the issue was not whether Crumpton evaded arrest but how
severely he should be punished for committing the offense.

 Regardless of the plea and whether the punishment be assessed by the
judge or the jury, evidence may be offered by the state and the defendant as to
any matter the court deems relevant to sentencing, including but not limited to
the prior criminal record of the defendant, his general reputation, his character,
an opinion regarding his character, the circumstances of the offense for which
he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of
Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime
or act.


Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008).


 In the punishment phase, the jury's purpose is to determine what sentence should be
assessed. Ellison v. State, 201 S.W.3d 714, 719-20 (Tex. Crim. App. 2006). "The policies
that operate during the punishment phase of a non-capital trial include (1) giving complete
information to the jury to allow it to tailor an appropriate sentence for the defendant; (2) the
rule of optional completeness; and (3) whether the appellant admits the truth during the
sentencing phase." Erazo v. State, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (citing
Mendiola v. State, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)). "Although relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. The
factors to be considered by the trial court in determining whether Rule 403 bars the
admission of otherwise relevant evidence include: (1) the probative value of the evidence; 
(2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed
to develop the evidence; and (4) the proponent's need for the evidence. Erazo, 144 S.W.3d
at 489 (citing Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on
reh'g)).

 Crumpton argues the evidence from the State's case-in-chief and the evidence of
Crumpton's eight prior convictions made the attack on Crumpton's character reflected in the
unadjudicated offence unfairly prejudicial. Thus, he argues that the State did not need the
evidence; however, the other factors weigh strongly in favor of the trial court's decision to
allow the testimony. For instance, the evidence had probative value in that it helped the jury
tailor the sentence to the defendant by helping the jury to decide whether Crumpton poses
a danger to the community and whether he would be likely to recidivate. The evidence was
not so inherently inflammatory that it would be likely to cause the jury to act in an irrational,
indelible way. The testimony did not take long to present to the jury. The trial court
determined that the prejudicial effect of the extraneous offense evidence offered in
punishment did not unduly outweigh its probative value. That ruling was well within the
zone of reasonable disagreement. We overrule issue two and affirm the judgment.

 AFFIRMED.



 _____________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on July 6, 2009

Opinion Delivered August 26, 2009

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.