02-10-253,254,255,256-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NOS.  02-10-00253-CR

       02-10-00254-CR

       02-10-00255-CR

      
02-10-00256-CR

 

 


 
 
 Nicolas Velazquez
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

Appellant
Nicolas Velazquez appeals four prison sentences assessed by a jury following convictions
of aggravated kidnapping, burglary of a habitation, and two aggravated assaults. 
In one point, Appellant contends that the trial court reversibly erred by
denying his punishment-phase request to instruct the jury that if it
recommended probation, the trial court could impose various probationary terms
and conditions designed to protect or restore the community or victim.[2] 
We affirm.

II.
Factual and Procedural Background

          Viewed
in the light most favorable to the verdict, the evidence reveals that, in
February 2009, Appellant sat in his car surveilling the apartment of his
estranged wife, Maria Guzman, where she lived with their three children, all of
whom were under the age of ten.  The next morning, he confronted Guzman as she
returned from the grocery store.  As Appellant implored Guzman to speak with
him, he suddenly noticed Jose Menchaca, Guzman’s boyfriend, walking toward
them, holding grocery bags in both hands.  Appellant instantly pulled out a
large kitchen knife from under his jacket, stepped toward Menchaca, and stabbed
him in the arm, causing him to fall to the ground.  When Guzman attempted to
push Appellant away from Menchaca, Appellant slashed the top of her head with
the knife.  When Menchaca pushed Appellant away from Guzman, Appellant stabbed
him on his left side.  Appellant and Menchaca continued fighting.  When Menchaca
tried to grab Appellant’s knife, Appellant pulled out a pocket knife and
stabbed Menchaca with one or both knives approximately twenty times, wounding
his face, arms, sides, abdomen, and back.

          As
Guzman screamed for help, Guzman and Appellant’s eight-year-old daughter came
out of the apartment, and when Appellant saw her, he released the kitchen knife
to Guzman.  Guzman threw the knife down and ordered their daughter inside.  As the
daughter headed back toward the apartment, Appellant ran after her.  Afraid for
her children, Guzman raced ahead of Appellant.  Although she reached the door
first and tried to close it, Appellant pushed Guzman inside.  Appellant then
entered, locked, and chained the door behind him.

          A
security guard approached the apartment and heard Guzman plead with Appellant
to let her go and not hurt her.  He also heard her say that she did not want to
be with him and that he should let her live her life.  The guard heard
Appellant reply, “If you aren’t with me, you aren’t going to be with anybody
else.”  When the guard ordered Appellant to let Guzman go, Appellant shouted,
“It’s not your problem.  Leave us alone.”  Guzman testified that Appellant
prevented her from leaving the apartment several times and refused to let the
children go. Appellant acknowledged to Guzman that he would be going to jail
for what he had done but added that, if he found out that Guzman was “with
anyone else,” he would track down and kill her family when he got out.

          When
several Fort Worth police officers arrived, Appellant refused to comply with
the officers’ pleas to let Guzman and the children go, stating that this was a
“family problem.”  Appellant threatened that if the officers continued to
interfere, he was going to hurt Guzman, the children, and himself.  Eventually,
the officers convinced Appellant to release the children.  As Appellant and
Guzman continued arguing, Appellant declared that they were going to die
together.  When the officers heard a struggle and the sound of shattering
glass, they kicked in the door.  Officers rescued Guzman and arrested
Appellant.[3]

          The
jury convicted Appellant of two aggravated assaults with a deadly weapon,
burglary of a habitation, and aggravated kidnapping.  Appellant elected to have
the jury assess punishment, and he filed a sworn application for community
supervision stating that he had never before been convicted of a felony.  See
Tex. Code Crim. Proc. Ann. art. 42.12, '
4(e) (West Supp. 2010).  Appellant’s counsel timely objected to the trial
court’s proposed punishment-phase jury instructions in each case, asserting
that they did not “include language regarding standard community supervision or
probation.”  Defense counsel requested the following language, 

If you recommend that
a defendant be placed upon probation, . . . the Court shall determine the
conditions of probation and may at any time during the period of probation
offer or modify the conditions.

 

The Court may impose
any reasonable condition that is designed to protect or restore the community,
[] protect or restore the victim, [] or punish, [], rehabilitate, [] or reform
a defendant.[4]

 

Defense
counsel asked the Court to “include that language regarding probation in each
and all of the Court’s charges.”  The requested language tracks the statutory
language that precedes the nonexclusive list of conditions that a trial court
may require as part of a defendant’s community supervision.  See id. art.
42.12, '
11(a) (West Supp. 2010).[5]  The trial court denied
Appellant’s requests but instructed that if the jury assessed Appellant’s
punishment at ten years or less, and if it found that Appellant had not
previously been convicted of a felony, it could recommend that imposition of
sentence be suspended and that Appellant be placed on probation.  The trial
court further instructed that “[i]n the event you recommend in your verdict
that [Appellant] be placed on probation, then the law requires the Judge to
suspend the imposition of the sentence and place [Appellant] on probation.” 
The jury assessed punishment at confinement in the penitentiary for twenty
years for the assault of Menchaca, five years for the assault of Guzman, ten
years for burglary, and thirty-eight years for aggravated kidnapping.  The
trial court sentenced Appellant accordingly.

III. 
Punishment Instructions Regarding Community Supervision

A
trial court must instruct the jury to consider recommending community
supervision if a defendant is eligible to receive it and he has followed the
proper procedures for raising the issue.  See Thompson v. State, 604
S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1980) (holding that eligibility
for community supervision is a valuable right and that the issue should be
submitted to the jury whenever the record reasonably supports the request).  In
this case, the trial court properly provided the jury the option of
recommending community supervision.

Appellant
argues that the trial court erred by excluding the requested language that the
trial court “may impose any reasonable condition that is designed to protect or
restore the community, protect or restore the victim, or punish, rehabilitate,
or reform the defendant.”  See Tex. Code Crim. Proc. Ann. art. 42.12, '
11(a).  He contends that, without this information, the jury likely assessed
penitentiary time after speculating that Appellant would not be supervised
while on probation.[6]  Appellant cites no
supporting authority but asserts that, because the jury is permitted to
recommend probation, “it stands to reason” that the law applicable to such
probation should include “the language . . . which
describes the basic terms and conditions of probation.”

We
initially note that it is well settled that a trial court is not required to
include in its punishment charge the terms and conditions a defendant might
face if the jury recommended community supervision.  See Sanchez v.
State, 243 S.W.3d 57, 69–70 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d); Cagle v. State, 23 S.W.3d 590, 595 (Tex. App.—Fort Worth 2000,
pet. ref’d) (op. on reh’g) (citing Yarbrough v. State, 742 S.W.2d 62, 64
(Tex. App.—Dallas 1987), pet. dism’d, improvidently granted, 779 S.W.2d
844, 845 (Tex. Crim. App. 1989)).  While Appellant challenges the trial court’s
refusal to include the language preceding the list of possible probationary
conditions, he does not cite, and this court is not aware of, a statute or any case
law that requires the trial court to include this language.  Cf. Tex.
Code Crim. Proc. Ann. art. 37.07, '
4(a) (West Supp. 2010) (requiring, when applicable, an instruction describing
parole eligibility).  We agree with the State that, because a trial court is
not required to define probation or list the conditions of probation, it
follows that a trial court does not abuse its discretion in failing to include
the statutory language preceding the list of conditions.[7]

 Additionally,
the court instructed the jury to deliberate the question of punishment “under
all the law and evidence in this case,” and the gist of what Appellant wanted to
convey to the jury through the requested language was elicited through
punishment-phase testimony.[8]  For instance, Appellant
testified that he was asking the jury to award him probation and that, if
ordered not to have any contact with Guzman, he would follow that order. 
During the State’s cross-examination, Appellant testified:

Q.  [State]:  Tell me
what you know about the conditions of probation.  Do you know what they are?

 

. . . . 

 

A.    [Appellant]:  The way that you live,
the things that you can do    

and the
things you cannot do.

 

Q.  Do you know any
of the rules of probation?

 

A.  I believe some,
not all of them.  I have never been in a problem like this.

 

. . . . 

 

Q.  What guarantees
can you give this jury that you will have absolutely nothing to do with
[Guzman] or Mr. Menchaca?

 

A.  Whatever they ask
me for [sic].  If they want to use one of this [sic] monitor on my ankle they
can do it. . . . 

 

. . . . 

 

Q.  Sir, an ankle
monitor won’t prevent you from being around [Guzman], will it?  It will just
tell probation that you violated. 

 

On
redirect examination, defense counsel asked Appellant, “If you are ordered not
to have any contact whatsoever with Maria Guzman, will you follow that order?” 
Appellant responded “Yes” and further testified:

Q.  [Defense
Counsel]:  You understand that if you receive probation and you violate a term
or condition of your probation, the Court could send you to the pen for up to
ten years?   

 

. . . .

 

A.    [Appellant]:  Yes.

 

Q.  That if you even
once contacted Menchaca or [Guzman] that could get you ten years in the pen?

 

A.  Yes.

 

During
closing arguments, Appellant’s trial counsel argued:

You can assure the
safety of the victims by putting him on probation. . . . 

 

. . . . 

 

          [N]o matter
what period of probation, if he commits a material violation, as the State
tells you, he can be arrested, brought back to court, have a hearing in front
of the Judge, and if the Judge finds that he violated even one material term or
condition of his probation, the Judge can sentence him to the pen . . . .  He’d
still be limited to ten years in the pen for what he did if he doesn’t change,
if he doesn’t live up to the terms and conditions of probation.

 

          And as the
State mentioned at trial, that includes paying probation fees, restitution to
the victim for medical bills, reporting once a month for the next ten years, if
that’s assessed by the Court, to the probation office, staying out of trouble,
staying off drugs, not drinking, having to perform urine tests every month. 
For the next ten years, if that’s what he gets on probation, his life would not
be his own, and he would have to comply with all the terms and conditions of
probation.  It’s not letting him off.  And the victims have a chance at
restitution for the medical bills they’ve suffered.

 

Thus,
the trial court’s charge, the testimony, and argument of counsel sufficiently
informed the jury that the trial court could impose probationary terms and
conditions if the jury were to grant community supervision.  See Foxworth
v. State, No. 12-09-00313-CR, 2010 WL 3431598, at *1–2 (Tex. App.—Tyler Sept.
1, 2010, no pet.) (mem. op., not designated for publication) (“We believe that
the court’s charge, the testimony, and argument of counsel sufficiently
informed the jury about the conditions of community supervision . . . for it to
render a proper verdict.”).  We overrule Appellant’s sole point.

IV. 
Conclusion

          Having
overruled Appellant’s sole point, we affirm the trial court’s judgments. 

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011








 









[1]See Tex. R. App. P. 47.4.





[2]Appellant raised an
additional point in his brief but withdrew it from review in a letter to the
court.





[3]Appellant testified in
both phases of trial.  In the punishment phase, he testified that “[t]he circumstances
lend themsel[ves] for everything that happened [sic], and that is why I’m now
asking for forgiveness for the possible mistakes that I made.  And I’m asking
for forgiveness [for] the people that I directly or indirectly hurt.  And for
the people who hurt me, I also forgive them.”





[4]Defense counsel also asked
the trial court to include the statutory definitions of “probation” and
“supervision officer,” which he read into the record.  See id. art.
42.12, '' 2(2), 2(3)
(West Supp. 2010).  Appellant does not specifically assert on appeal that the
trial court erred in failing to include these definitions.





[5]The
statute provides:

The judge of the court having jurisdiction of the case
shall determine the conditions of community supervision and may, at any time
during the period of community supervision, alter or modify the conditions. 
The judge may impose any reasonable condition that is designed to protect or
restore the community, protect or restore the victim, or punish, rehabilitate,
or reform the defendant.  Conditions of community supervision may include, but
shall not be limited to, the [following] conditions . . . .  

Id. art. 42.12, ' 11(a).





[6]The interchangeable use of
the terms probation and community supervision is widely accepted.  Holcomb
v. State, 146 S.W.3d 723, 732 n.7 (Tex. App.—Austin 2004, no pet.).





[7]We note that article
42.12, section 4 (rather than section 11) defines the jury’s role in
recommending supervision.  Tex. Code Crim. Proc. Ann. art. 42.12, ' 4; see Ellison v. State,
201 S.W.3d 714, 720 (Tex. Crim. App. 2006) (“While ordering the conditions of,
and maintaining supervision over, a defendant’s probation are outside the
jury’s province, the jury’s primary duty is to recommend whether probation should
be granted at all.”).





[8]Additionally, the
State explained during jury selection that, in certain circumstances, a
defendant may be eligible to be placed on community supervision and that 

 

[c]ommunity
supervision, probation, what that means is released into the community under
the supervision of the Court.  The Court may assess certain conditions, and the
person has to follow those conditions in order to remain at liberty.  But,
basically, it means release into the community under the supervision of the Court. 
That is what used to be called straight probation.  Now it’s called community
supervision.  Okay?