**Affirmed and Memorandum Opinion filed December 1, 2011.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-10-01093-CR
NO. 14-10-01094-CR
NO. 14-10-01095-CR
NO. 14-10-01096-CR

_____

**JIM HOWARD, III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause Nos. 09CR1076, 09CR1077, 09CR1078, 09CR1079**

## MEMORANDUM OPINION

Jim Howard, III appeals two life sentences for intoxication manslaughter and two twenty-year sentences for intoxication assault. *See* TEX. PENAL CODE ANN. §§ 49.07, 49.08 (West 2011). He argues that the trial court failed to correctly admonish him on the consequences of his guilty plea; that the trial court should have excluded testimony by an accident-reconstruction expert; and that the sentences assessed constituted cruel and unusual punishment under the Eighth Amendment. Because the trial court substantially complied with the statutory admonition requirements and properly admitted the expert

testimony, and because appellant did not preserve his Eighth Amendment argument, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Just before 2:00 a.m. on March 21, 2009, appellant drove his car at approximately eighty miles per hour into the back of a stopped car occupied by six teenagers. The impact of the collision was so great that the back seat of the teenagers' car completely caved in and the car was propelled over 100 feet into the intersection where it had been stopped. An officer surveying the crash scene testified that when he saw the damage, he "thought nobody in the rear of that vehicle survived . . . It was just a mass of metal and people." At the time of the collision, Sara Rogers[1] was sitting on the lap of her friend, Rachel Murphy, in the back-middle seat of the struck vehicle. Rogers died instantly. Murphy sustained multiple devastating injuries and died in a hospital twelve days later. Jane Porter, sitting to the left of the two girls, was left with a shattered pelvis and permanent scars; Bobby Herman, to their right, suffered back and head injuries. The car's driver, Pamela Smith, suffered permanent damage to her right pelvis and foot. Jason Collins, who was in the front passenger seat, sustained minor injuries.

When Officer Forest Gandy of the La Marque Police Department arrived at the scene, he found appellant sitting on the ground next to the wreckage. Officer Gandy spoke with appellant and noticed that appellant's eyes were red and glassy; his speech was slurred; and he smelled strongly of alcohol. Later tests showed that appellant's blood-alcohol level was more than double the legal limit.

Officer Julius Campbell of the La Marque Police Department was the on-call accident investigator on the night of the crash. When he arrived at the scene, he examined the damage to the cars; took measurements of their positions; had photographs of the scene

---

[1] All six victims—Rogers, Murphy, Porter, Herman, Smith, and Collins—were minors at the time of the accident. All six of these names are pseudonyms that we have assigned to protect the victims' identities.

taken; and marked the location of evidence with paint, flags, and other markings. He later called Sergeant Paul Adkins of the Texas Department of Public Safety, who had extensive training and experience in accident reconstruction, to help investigate the scene and make a forensic map of the evidence. Sergeant Adkins initially testified that he came "two or three days" later, but stated in response to defense counsel's questioning that his visit may not have been until several weeks after the crash. After examining Officer Campbell's markings and some "gouging and scraping" still visible on the road, Sergeant Adkins used special surveying equipment to construct a map of the scene showing the point of impact and the relative positions of the cars before and after the crash. He testified that the "scraping from the vehicles involved in the crash . . . [was] very consistent with a great speed difference rear end collision." He also determined, based on the absence of rubber residue on the road, that appellant had taken no evasive action before the crash. Sergeant Adkins estimated the speed of the impact by calculating the momentum and direction of appellant's car after the crash, taking into account the relative weights of the cars and the friction between the cars and the road. Based on these factors, he concluded that appellant was travelling "well in excess of the speed limit" at the time of impact.

Appellant was charged with two counts of intoxication manslaughter for causing the deaths of Rogers and Murphy and two counts of intoxication assault for causing serious bodily injuries to Porter and Smith. *See* TEX. PENAL CODE ANN. §§ 49.07, 49.08. Each count was accompanied by a notice of the State's intent to seek an affirmative deadly-weapon finding for appellant's use of a motor vehicle. Each count was also enhanced by a prior conviction for aggravated sexual assault of a child.

Appellant waived his right to a jury trial and pled guilty to each charge and true to each affirmative deadly-weapon finding and enhancement. He also signed written plea admonishments informing him that, if convicted, he faced the range of punishment for a first-degree felony—"[a] term of life or a term of not more than 99 years or less than 5 years in the Institutional Division of the Texas Department of Criminal Justice and in

3

addition, a possible fine not to exceed $10,000.00." He further affirmed that, "joined by [his] counsel[,] . . . [he understood] the foregoing admonishments of the court and [was] aware of the consequences of [his] plea . . . [and] that [his] plea was freely and voluntarily made." He certified that he "freely and voluntarily [pled] guilty and confessed [his] guilt to having committed each and every element of the offense alleged in the indictment . . . [and pled] true to the enhancement plead in this cause . . . [and] to the deadly weapon allegation in the indictment." At appellant's arraignment, the following exchange took place:

> THE COURT: Mr. Howard, in each of these cases you were charged by indictment with offenses alleged to have occurred on or about the 21st day of March, 2009 in Galveston County, Texas. The first two we are going to look at are allegations of intoxication manslaughter with an affirmative finding of a deadly weapon with a motor vehicle with an enhancement paragraph alleged . . . Do you understand what you are charged with in each of those cases?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Do you have any questions about the charges?
>
> [APPELLANT]: No, sir.
>
> THE COURT: You understand in each of these you face the following range of punishment: A term of life or any term of not more than 99 years. Actually, with the enhancement the punishment range will be—
>
> [THE STATE]: Manslaughter, first degree five to ninety-nine.
>
> THE COURT: Okay. Not more than 99 or less than five years in the Institutional Division of the Texas Department of Criminal Justice and in addition a possible fine not to exceed $10,000. Have you discussed that potential range of punishment with your attorney?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Any questions about that?

4

[APPELLANT]: No, sir.

. . . .

[THE STATE]: I am going to show you each of these [written admonishment forms]. Do you recognize these documents?

[APPELLANT]: Yes, ma'am.

[THE STATE]: On the back did you sign each of these documents under plea of guilty?

[APPELLANT]: Yes, ma'am.

[THE STATE]: Are you also pleading guilty to the enhancement and the charge in each one of these [documents]?

. . . .

[APPELLANT]: Yes, ma'am.

[THE STATE]: Did you sign these freely and voluntarily?

[APPELLANT]: Yes, ma'am.

[THE STATE]: Did you understand what you were signing?

[APPELLANT]: Yes, ma'am.

The trial court then proceeded to trial on punishment. After hearing evidence and arguments, the trial court assessed a life sentence for each intoxication-manslaughter charge and a twenty-year sentence for each intoxication-assault charge.

## II.    ISSUES PRESENTED

In his first issue, appellant argues that his guilty plea was not knowing and voluntary because the trial court failed to correctly admonish him about the range of punishment for his intoxication-manslaughter charges and the effect of a deadly-weapon finding on all four charges. He next contends that the trial court erred in admitting Sergeant Adkins's

5

accident-reconstruction testimony.   Finally, he argues that the sentence constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

### III.   ANALYSIS

### A.   Failure to Admonish

Appellant first argues that the trial court failed to correctly admonish him on the consequences of his guilty plea.   Prior to accepting a plea of guilty, the trial court must admonish the defendant of the range of the punishment attached to the offense.   TEX. CODE. CRIM. PROC. ANN. art. 26.13(a) (West 2011).   The court may make the admonitions either orally or in writing.   *Id.* art. 26.13(d).   If it does so in writing, it must receive a statement signed by the defendant and the defendant's attorney that the defendant understands the admonitions and is aware of the consequences of his plea.   *Id.* Substantial compliance with Article 26.13 is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.   *Id.* art. 26.13(c).

Appellant contends that the trial court failed to admonish him correctly as to the range of punishment for intoxication manslaughter.   He cites the following exchange:

> THE COURT: You understand in each of these you face the following range of punishment: A term of life or any term of not more than 99 years. Actually, with the enhancement the punishment range will be—
>
> [THE STATE]: Manslaughter, first degree five to ninety-nine.
>
> THE COURT: Okay.   Not more than 99 or less than five years in the Institutional Division of the Texas Department of Criminal Justice and in addition a possible fine not to exceed $10,000.   Have you discussed that potential range of punishment with your attorney?
>
> [APPELLANT]: Yes, sir.

6

Appellant ultimately was sentenced to life in prison on each count. He argues that the State's interjection, which the trial court seemed to adopt, misstated the range of punishment for intoxication manslaughter.

Intoxication manslaughter is a second-degree felony. TEX. PENAL CODE ANN. § 49.08(b). Because appellant was previously convicted of aggravated sexual assault of a child, however, he was subject to the range of punishment for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(a)–(b) (prior felony conviction causes third-degree felony to be punishable as second-degree felony, and second-degree felony to be punishable as first-degree felony); § 22.021(e) (aggravated sexual assault, including that of a child, is a felony). The range of punishment for a first-degree felony is, as relevant here, imprisonment for life or for any term of not more than 99 years or less than five years. *Id.* § 12.32(a).

Appellant does not specify how the range of punishment stated by the trial court was incorrect, but he implies that the trial court erred when it adopted the prosecutor's statement that the penalty was "[n]ot more than 99 or less than five years." We understand appellant to assert that this statement contradicted the trial court's initial admonishment that the maximum punishment was a life sentence. The trial court's two statements, however, tracked precisely the language of the statute, which provides that the range of punishment for a first-degree felony is "imprisonment . . . for life *or* for any term of not more than 99 years or less than five years." *Id.* (emphasis added). In addition, appellant signed written admonishments for both intoxication-manslaughter charges, each of which correctly stated the applicable range of punishment in accordance with the statute. Even assuming, without deciding, that the trial court's oral admonishment did not substantially comply with the statutory admonition requirements, the signed admonishments unambiguously complied with those requirements. *See* TEX. CODE. CRIM. PROC. ANN. art. 26.13(d) (allowing for either oral or written admonishments). Moreover, appellant has not affirmatively shown that he was not aware of the consequences of his plea or that he was misled or harmed by the admonishment of the

7

court, as required by the rule. *See id.* art. 26.13(c). There is therefore no basis for his complaint.

Appellant next argues that the trial court's admonishments did not substantially comply with Article 26.13 because the trial court did not warn him about the consequences of an affirmative deadly-weapon finding. *See* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2) (if it is shown that a deadly weapon was used or exhibited during the commission of a felony offense, a judge may not order community supervision). A defendant need only be made fully aware of those consequences of a guilty plea that are both direct and punitive; failure to admonish about a consequence that is either collateral or non-punitive in nature will not render a plea involuntary. *See Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004). An affirmative deadly-weapon finding does not affect the assessment of punishment; it merely affects a defendant's eligibility for community supervision. *See Papke v. State*, 982 S.W.2d 464, 467 (Tex. App.—Austin 1998, pet. ref'd, untimely filed) (holding that admonishment substantially complied with Article 26.13 even though trial court failed to inform defendant about consequences of deadly-weapon finding); *see also Ex Parte Huskins*, 176 S.W.3d 818, 820–21 (Tex. Crim. App. 2005) (holding that failure of trial court to orally announce deadly-weapon finding did not destroy defendant's expectation of serving announced sentence because "[a] deadly-weapon finding may affect how the sentence is served, but it is not part of the sentence."). Further, the effect of a deadly-weapon finding is not "direct" to the extent that the trial court's failure to admonish a defendant about it would render a guilty plea involuntary. *See Ex Parte Evans*, 690 S.W.2d 274, 278 (Tex. Crim. App. 1985) ("The speculative nature of parole *attainment* is such as to discount its legal importance on the subject of voluntariness of a guilty plea."). Appellant makes no attempt to show that he was not aware of the consequences of his plea or that he was misled or harmed by the admonishment of the court. *See* TEX. CODE. CRIM. PROC. ANN. art. 26.13(c). To the contrary, the record shows that appellant repeatedly affirmed, orally and in writing, that he understood the consequences of his plea. Appellant specifically pled true to the

8

deadly-weapon findings at his arraignment and in the signed admonishments.  He also affirmed, both orally and in writing, that he understood what he was signing and that he did so freely and voluntarily.   Accordingly, we overrule appellant's first issue.

## B.      Expert Testimony

Appellant next contends that the trial court erred in admitting Sergeant Adkins's accident-reconstruction testimony.  To be considered reliable, evidence derived from a scientific theory must satisfy three criteria in any particular case: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question.  *Coble v. State*, 330 S.W.3d 253, 273 (Tex. Crim. App. 2010) (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)).   We apply an abuse-of-discretion standard in reviewing a trial court's admission of expert testimony.  *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006).   Absent a clear abuse of discretion, we will not disturb the trial court's decision to admit or exclude testimony.  *Id.*   A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.  *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

Appellant argues that Sergeant Adkins's testimony was not reliable because he "based his calculations on weeks old marks on the road[,] not on any measurements that were originally taken at the time of the accident."   Appellant does not clarify whether he is arguing that using such markings in accident reconstruction is an inherently invalid technique, or that doing so is a valid technique but Sergeant Adkins misapplied it on this occasion.   In any event, he cites no authority to support either assertion.  *See Wooten v. State*, 267 S.W.3d 289, 303 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Appellant contends that . . . the latest technology . . . is more reliable than [that used by an accident-reconstruction expert in that case], but appellant offers no authority for this conclusion beyond this assertion.").   Appellant offered no evidence that either the

9

methodology Sergeant Adkins described or the way Sergeant Adkins applied it was unreliable.

Moreover, virtually all of Sergeant Adkins's testimony was cumulative of the testimony of other witnesses who were present at the time of the crash. One witness, for example, testified that appellant was travelling at "very high rate . . . about 80 miles per hour" and that he hit the teenagers' car from behind. Another added that appellant drove straight into the victims' car without stopping, braking, or swerving. Numerous witnesses also testified, and photographs taken at the scene showed, that the force of the impact was such that it completely destroyed the back of the teenagers' car and propelled the car into the intersection where it had been stopped. In light of this evidence, any alleged error in admitting Sergeant Adkins's testimony would have been harmless. *See* TEX. R. APP. P. 44.2(b). Accordingly, we overrule appellant's second issue.

## C.      Cruel and Unusual Punishment

In his final issue, appellant argues that his sentence was cruel and unusual under the Eighth Amendment to the United States Constitution because he "evidenced remorse numerous times during his testimony" and "testified that he did not commit the accident because of his intoxication . . . but because he fell asleep." *See Graham v. Florida*, 130 S. Ct. 2011, 2021, 176 L. Ed. 2d 825 (2010) (recognizing prohibition of "extreme sentences" that are "grossly disproportionate to the crime" even in noncapital cases). To preserve a complaint that a sentence is unconstitutionally cruel and unusual, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *Arriaga v. State*, 335 S.W.3d 331, 334 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996)). Appellant did not raise his complaint in the trial court, so it has not been preserved for our review. *See id*. We overrule appellant's third issue.

## IV.  CONCLUSION

We conclude that that the trial court correctly admonished appellant about the consequences of his guilty plea; that the trial court did not abuse its discretion in admitting Sergeant Adkins's testimony; and that appellant failed to preserve his Eighth Amendment argument for review.   We therefore affirm the trial court's judgment.


/s/      Tracy Christopher
Justice


Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11