

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-178-CR
### NO. 2-09-179-CR
### NO. 2-09-180-CR

KEVIN ANDRE BURLESON                                      APPELLANT
A/K/A KEVIN A. BURLESON

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

### MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Kevin Andre Burleson a/k/a Kevin A. Burleson of two counts of aggravated assault with a deadly weapon and one count of unlawful possession of a firearm by a felon, all charged separately.  The jury found the enhancement paragraph true and assessed Appellant's punishment at thirty years' confinement plus a $5,000 fine for one aggravated assault conviction, twenty years' confinement plus a $5,000 fine for the other aggravated assault conviction, and

---

[1] See Tex. R. App. P. 47.4.

thirteen years' confinement plus a $2,500 fine for the unlawful possession of a firearm conviction. The trial court sentenced him accordingly. In three issues, Appellant challenges the legal and factual sufficiency of the evidence supporting the jury's rejection of his defense of self-defense, the admission of photographs of one of the complainants, and the admission of expert testimony on gang activity. Because we hold that the evidence is legally and factually sufficient to support Appellant's convictions and the jury's rejection of his defense of self-defense and that the trial court did not abuse its discretion by admitting the challenged photographs or expert testimony, we affirm the trial court's judgments.

**Background Facts**

The evidence shows that late on the evening of the Super Bowl in February 2008, Appellant went to the home of Stephene, the father of Appellant's fiancée's daughter, to pick up the little girl. Appellant parked in the street in front of but opposite Stephene's house. Stephene and the little girl's mother had already been arguing on the telephone regarding the late return of the child. Evidence conflicts regarding whether Stephene and Appellant had also argued on the telephone. Stephene and his brothers Shawno and Ramone, as well as some other guests, were standing outside when Appellant arrived. Appellant stepped out of his car into the street and demanded the child. Stephene went down to talk with Appellant but refused to allow the child to go with Appellant without her mother also being present. Ramone, who was drunk, and Shawno walked down to the intersection of the

2

driveway and the street, where Appellant and Stephene stood. Ramone testified that he joined in the verbal argument. He also testified that Appellant "kept saying, 'I'm on some G shit,'" which Ramone interpreted as, "I'm on some gangster shit. I'm not playing with you. I'm serious." Ramone also testified that he got "in [Appellant's] face" before Appellant got back in his car but did not touch him.

The evidence conflicts regarding how often Appellant returned to his car, but at one point he got in his car, sat in the driver's seat for about three minutes, and then exited the car. When Appellant exited his car, he was carrying a gun "to his right-hand side." He told Stephene, "I got some G shit. Y'all don't want to play with me. Just go get [the little girl]. Just go get [the little girl]." Stephene testified that he told his brothers that they were "not fixing to do this," and "Let's go," and they all three walked back up the driveway. Shawno testified that he had already walked back up to the porch by this time and that his cousin told him that Appellant had a gun.

Stephene stated that Ramone was upset that Stephene did not want to fight. Stephene and Ramone both testified that Ramone ran up to Appellant, but Stephene grabbed Ramone and took him back to the front porch, telling him that Appellant had a gun. Shawno overheard this statement. Ramone broke free of Stephene, ran back down to the end of the driveway, punched Appellant in the face, and fell into him. Ramone testified that he grabbed Appellant around the waist, "grabbing on for [his] life." Appellant then shot his gun multiple times, hitting Ramone, Stephene, and

3

Shawno, who had run toward Appellant and Ramone after hearing a gunshot and seeing a flash. Stephene and Ramone testified that after Appellant got back in his car, went to the end of the cul-de-sac, and drove back by the house, he fired two more shots; Shawno testified that he heard another shot as Appellant was driving away. Ramone was shot in the arm, Shawno was shot twice in the left arm and once in the chest, and Stephene was shot in his face, his shoulder, and back. One bullet remained in Stephene's lung at the time of trial. The trial court admitted photographs taken of the three brothers after the shooting.

Stephene testified that no one else at his house had a gun that evening, and the police did not find any guns when they later interviewed witnesses and searched Stephene's house.

In the voluntary statement that Appellant gave to the police, he stated that

- he did not talk to Stephene on the telephone before driving to Stephene's house,

- he should not have "[gone] out there,"

- "they attacked [him],"

- "they kept running up on [him],"

- when he stepped out of the car the third time, Stephene's brother hit him,

- he heard a shot before he started shooting,

- he felt like his life was in danger, and

- he took the gun to Stephene's house because he "had a feeling [that] something like that was going to happen."

4

The jury acquitted Appellant of committing aggravated assault with a deadly weapon against Ramone but convicted Appellant of committing aggravated assault with a deadly weapon against Stephene and Shawno and of possession of a firearm by a felon.

At punishment, the trial court admitted expert gang testimony that Appellant is or was a member of the Crips.

**Sufficiency of the Evidence**

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence supporting the jury's rejection of his defense of self-defense in the aggravated assault cases. A defendant has the burden of producing some evidence to support a claim of self-defense.[2] The State has the burden of persuasion in disproving self-defense.[3] This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt.[4] Self-defense is an issue of fact to be

---

[2] *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

[3] *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

[4] *Id.*

determined by the jury.[5]  A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.[6]

In reviewing the legal sufficiency of the evidence to support the jury's rejection of Appellant's self-defense theory, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt.[7]

A factual sufficiency challenge to a verdict implicitly rejecting a defense, such as self-defense, requires us to review all of the evidence in a neutral light and ask whether the State's evidence, if taken alone, is too weak to support the finding or whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence.[8]

Section 9.32 of the penal code provides in relevant part,

A person is justified in using deadly force against another . . . if the actor would be justified in using force against the other under Section 9.31; and . . . when and to the degree the actor reasonably believes the

---

[5] *Id.* at 913–14.

[6] *Id.* at 914.

[7] *Id.*

[8] *Zuliani*, 97 S.W.3d at 594–95; *Walker v. State*, 291 S.W.3d 114, 118 (Tex. App.—Texarkana 2009, no pet.).

deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force.[9]

Appellant claims that he fired the gunshots as he was being physically attacked by Ramone and "confronted by several other enraged inebriated men." In his recorded statement, Appellant states that "they" attacked him, that they "kept running up on" him, that he felt like his life was in danger, and that he heard a shot before he started shooting. Yet the evidence viewed in the light most favorable to the verdict shows that

- Appellant demanded that Stephene go get his daughter,

- Stephene refused, and he and Appellant argued,

- Ramone joined the verbal battle,

- Appellant returned to his car for about three minutes,

- Appellant exited his car with a gun,

- Ramone got "knee-deep in [Appellant's] face," but Stephene grabbed Ramone and dragged him to safety, telling him that Appellant had a gun,

- The three brothers had turned away from Appellant and were on or near the porch,

- Ramone broke away from Stephene, punched Appellant, and fell into him, and

- Appellant then emptied his gun into the three brothers, none of whom was armed.

Given the evidence that Shawno walked away from Appellant and toward the house before Appellant exited the car with the gun, that Stephene pulled Ramone

---

[9] Tex. Penal Code Ann. § 9.32(a) (Vernon Supp. 2009).

7

away from Appellant and tried to prevent a fight, that neither Stephene nor Shawno was armed, and that Appellant shot Stephene in the back, we hold that the evidence is legally sufficient to support the jury's verdict and the jury's implicit rejection of Appellant's defense of self-defense.

Likewise, despite Appellant's arguments that it was reasonable to believe that Stephene and Shawno would attack him because Ramone did, the evidence indicating that only Appellant was armed, that Stephene retreated after seeing Ramone's gun, and that Shawno had retreated back to the house after he saw Appellant get back in his car, coupled with Appellant's decision to leave the safety of his vehicle and escalate the battle from verbal to deadly, justifies the jury's decision. That is, we hold that the evidence is factually sufficient to support the jury's verdict and implicit rejection of Appellant's theory of self-defense. We overrule Appellant's first issue.

**Admission of Photographs of Stephene's Wounds**

In his second issue, Appellant challenges the admission of photographs of Stephene's wounds, State's Exhibits 1, 2, 4, 5, and 7. First, Appellant contends that the photographs should have been excluded under rule 403 because they were unfairly prejudicial. Second, he argues that the photographs had little probative value and that the State had little need of them because the gunshot wounds were not at issue and Stephene testified about his wounds. Third, Appellant argues that the photographs had a tendency to influence the jury improperly by arousing their

8

sympathy. Fourth, he argues that the graphic nature of the photographs could have distracted the jury from determining whether he acted in self-defense. Fifth, he contends that the jury most likely gave the pictures undue weight, especially since they included photographs of gunshot wounds to the face. Sixth, he argues that the time spent was significant in terms of its possible effects on the jury. At trial, Appellant objected only that the photographs were graphic, designed to inflame the passions of the jury, and more prejudicial than probative. Appellant therefore did not preserve his arguments regarding confusion of the issues, misleading the jury, considerations of undue delay, or presentation of cumulative evidence.[10]

Regarding the preserved complaints, in *Williams v. State*, a death penalty appeal, the Texas Court of Criminal Appeals held,

> The photographs were introduced to assist the medical examiner in explaining the injuries and to rebut appellant's self-defense argument. The photographs, particularly the close-ups of the bullet wounds, are gruesome; however, they portray no more than the gruesomeness of the injuries inflicted by appellant. The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. The trial court's decision to admit this evidence was within the zone of reasonable disagreement and was not an abuse of discretion.[11]

Similarly, here, the pictures of Stephene were apparently introduced to help him explain his multiple gunshot wounds and injuries, and, whether it was the State's intent or not, the exhibits helped rebut Appellant's self-defense argument because

---

[10] *See* Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[11] 301 S.W.3d 675, 693 (Tex. Crim. App. 2009) (citation omitted).

9

they, along with unobjected-to testimony by Stephene, showed that a bullet entered his back. We have viewed the photographs. While they are gruesome, "they portray no more than the gruesomeness of the injuries" Appellant inflicted.[12] We hold that the trial court did not abuse its discretion by concluding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice or by admitting the photographs. We overrule Appellant's second issue.

**Gang Testimony**

In his third issue, Appellant contends that the trial court erred by admitting expert testimony regarding gang activity because Wafeeq Sabir, Ph.D., was not qualified to testify as an expert and the testimony was more prejudicial than probative. Rule 702 of the rules of evidence allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue.[13] The proponent of the witness has the burden of proving that the witness is qualified to give an expert opinion.[14] A person's specialized education, practical experience, study of technical works, or some combination thereof may provide him with the specialized knowledge that qualifies

---

[12] *See id.*

[13] Tex. R. Evid. 702.

[14] *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

10

him to testify as an expert.[15] With fields of study that are based primarily upon experience and training as opposed to the scientific method, courts determine (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field.[16] "A trial court need not exclude expert testimony simply because the subject matter is within the comprehension of the average jury."[17]

We will not disturb the trial court's decision to admit expert testimony absent a clear abuse of the trial court's discretion,[18] and we must uphold the trial court's ruling if it is within the zone of reasonable disagreement.[19] Additionally, we must review the trial court's ruling in light of the evidence before that court when the ruling was made.[20]

In deciding whether a trial court has clearly abused its discretion, we may consider several criteria, including the complexity of the field of expertise, the

---

[15] *Id.*

[16] *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

[17] *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

[18] *Nenno*, 970 S.W.2d at 561.

[19] *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

[20] *Wyatt*, 23 S.W.3d at 27.

conclusiveness of the expert's opinion, and the centrality of the area of expertise to

the case:

> First, is the field of expertise complex? The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify. If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience. For example, DNA profiling is scientifically complex; latent-print comparison (whether of fingerprints, tires, or shoes) is not. Second, how conclusive is the expert's opinion? The more conclusive the expert's opinion, the more important is his degree of expertise. Testimony that a given profile occurred one time in 2.578 sextillion (2.578 followed by 21 zeroes), a number larger than the number of known stars in the universe (estimated at one sextillion) requires a much higher degree of scientific expertise than testimony that the defendant's tennis shoe could have made the bloody shoe print found on a piece of paper in the victim's apartment. And third, how central is the area of expertise to the resolution of the lawsuit? The more dispositive it is of the disputed issues, the more important the expert's qualifications are. If DNA is the only thing tying the defendant to the crime, the reliability of the expertise and the witness's qualifications to give his opinion are more crucial than if eyewitnesses and a confession also connect the defendant to the crime.[21]

At the rule 705 hearing,[22] Sabir testified that he had been with the Fort Worth

Police Department Gang Unit for seventeen years. He testified that he has

familiarity with gangs and gang activity in Fort Worth through his work in the gang

unit as an enforcement officer and intervention officer. He has attended in-house

education and conferences throughout the nation on gang activity. He also has

---

[21] *Id.* at 528 (footnotes and quotations omitted).

[22] *See* Tex. R. Evid. 705(b).

delivered presentations on gangs each year to law enforcement organizations and at conferences. He testified that he has experience in identifying members of criminal street gangs through the examination of tattoos and other characteristics. He has also previously testified in Tarrant County on the subject of gangs and gang membership.

Sabir's testimony in the hearing described his years of professional experience and training, and he testified that his opinion that Appellant is or was a Crip was based on his experience with gangs, Appellant's admissions to unknown contact officers, photographs of Appellant, and Appellant's tattoo exhibiting "a gangster throwing up a C" and headstones and a graveyard. In light of the evidence at the time of the rule 702 ruling, we hold that the trial court did not abuse its discretion by determining that Sabir was qualified to testify as an expert.[23]

Regarding Appellant's rule 403 objection, article 37.07, section 3(a) of the code of criminal procedure provides,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond

---

[23] *See, e.g., Hernandez v. State*, No. 03-04-356-CR, 2006 WL 191918, at *3–5 (Tex. App.—Austin Jan. 26, 2006, pet. ref'd) (mem. op., not designated for publication) (upholding trial court's decision that police sergeant and deputy sheriff qualified as gang experts).

a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.[24]

In the punishment phase, evidence is relevant if it helps the jury determine the appropriate punishment for a particular defendant in a particular case.[25] In punishment, then, admissibility of evidence is more a matter of policy than of "logical relevance."[26] A defendant's choice of tattoos can reflect his character,[27] as can his gang membership.[28]

But under rule 403, otherwise relevant punishment evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[29] Factors considered in our analysis of an issue regarding rule 403 are (1) the probative value of the evidence; (2) the potential to impress the jury in some

---

[24] Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2009).

[25] *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006).

[26] *Id.*

[27] *See Conner v. State*, 67 S.W.3d 192, 201 (Tex. Crim. App. 2001).

[28] *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (noting that evidence of gang membership is relevant to show character), *cert. denied*, 522 U.S. 832 (1997).

[29] Tex. R. Evid. 403; *Rogers v. State*, 991 S.W.2d 263, 266–67 (Tex. Crim. App. 1999).

irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.[30]

Sabir testified that based on his training and experience and after reviewing the State's exhibits, including State's Exhibit 52, a photograph of Appellant with a tattoo exhibiting "an individual with a bandana wrapped around . . . the head end of [his] face and [he is] throwing up . . . what would be a C for Crip," he was of the opinion that Appellant is or was a member of the Crips. On cross-examination, Sabir testified that Appellant was a member of the Crips "[s]ometime during the year 2004."

Sabir's testimony took very little time to develop, alluded to Ramone's testimony about Appellant's warning about "gangster shit" before he shot the three brothers, and responded to the testimony of Appellant's family members that he was not a member of a gang and had never hung out on the street, that he was not violent, that he was a peaceful person, and that it was out of character for him to carry a gun.[31] Finally, on the aggravated assaults, the jury sentenced Appellant to thirty years' confinement on one count and twenty years' confinement on the other

---

[30] ▲ *Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000).

[31] ▲ *See Dean v. State*, Nos. 02-07-287-CR, 02-07-288-CR, 02-07-289-CR, 2008 WL 4831390, at *7 (Tex. App.—Fort Worth Nov. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (contrasting challenged testimony with testimony of Dean's relatives).

count when, because of the enhancements, he faced up to ninety-nine years or life,[32] and the State had argued for fifty years' confinement on each. We therefore cannot conclude that the evidence that Appellant was or is a Crip affected the jury in an irrational way. Based on our analysis of all the rule 403 factors, we cannot say that the trial court abused its discretion by admitting Sabir's testimony.[33] We overrule Appellant's third issue.

**Conclusion**

Having overruled Appellant's three issues, we affirm the trial court's judgments.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 29, 2010

---

[32] *See* Tex. Penal Code Ann. §§ 12.33(a), 12.42(b), 22.02(b) (Vernon Supp. 2009).

[33] *See Reese*, 33 S.W.3d at 240–41.