COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                 NO.
2-09-178-CR

NO. 2-09-179-CR

NO. 2-09-180-CR

 

KEVIN ANDRE BURLESON                                                                APPELLANT

A/K/A
KEVIN A. BURLESON

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








A
jury convicted Appellant Kevin Andre Burleson a/k/a Kevin A. Burleson of two
counts of aggravated assault with a deadly weapon and one count of unlawful
possession of a firearm by a felon, all charged separately.  The jury found the enhancement paragraph true
and assessed Appellant=s punishment at thirty years=
confinement plus a $5,000 fine for one aggravated assault conviction, twenty
years=
confinement plus a $5,000 fine for the other aggravated assault conviction, and
thirteen years=
confinement plus a $2,500 fine for the unlawful possession of a firearm
conviction.  The trial court sentenced
him accordingly.  In three issues,
Appellant challenges the legal and factual sufficiency of the evidence
supporting the jury=s rejection of his defense
of self-defense, the admission of photographs of one of the complainants, and
the admission of expert testimony on gang activity.  Because we hold that the evidence is legally
and factually sufficient to support Appellant=s
convictions and the jury=s rejection of his defense
of self-defense and that the trial court did not abuse its discretion by
admitting the challenged photographs or expert testimony, we affirm the trial
court=s
judgments.

Background Facts








The
evidence shows that late on the evening of the Super Bowl in February 2008,
Appellant went to the home of Stephene, the father of Appellant=s
fiancée=s
daughter, to pick up the little girl. 
Appellant parked in the street in front of but opposite Stephene=s
house.  Stephene and the little girl=s
mother had already been arguing on the telephone regarding the late return of
the child.  Evidence conflicts regarding
whether Stephene and Appellant had also argued on the telephone.  Stephene and his brothers Shawno and Ramone,
as well as some other guests, were standing outside when Appellant arrived.  Appellant stepped out of his car into the
street and demanded the child.  Stephene
went down to talk with Appellant but refused to allow the child to go with
Appellant without her mother also being present.  Ramone, who was drunk, and Shawno walked down
to the intersection of the driveway and the street, where Appellant and
Stephene stood.  Ramone testified that he
joined in the verbal argument.  He also
testified that Appellant Akept saying, =I=m on
some G shit,=@
which Ramone interpreted as, AI=m on
some gangster shit.  I=m
not playing with you.  I=m
serious.@  Ramone also testified that he got Ain
[Appellant=s]
face@
before Appellant got back in his car but did not touch him.

The
evidence conflicts regarding how often Appellant returned to his car, but at
one point he got in his car, sat in the driver=s
seat for about three minutes, and then exited the car.  When Appellant exited his car, he was
carrying a gun Ato his right-hand side.@  He told Stephene, AI
got some G shit.  Y=all
don=t
want to play with me.  Just go get [the
little girl].  Just go get [the little
girl].@  Stephene testified that he told his brothers
that they were Anot fixing to do this,@ and
ALet=s
go,@ and
they all three walked back up the driveway. 
Shawno testified that he had already walked back up to the porch by this
time and that his cousin told him that Appellant had a gun.








Stephene
stated that Ramone was upset that Stephene did not want to fight.  Stephene and Ramone both testified that
Ramone ran up to Appellant, but Stephene grabbed Ramone and took him back to
the front porch, telling him that Appellant had a gun.  Shawno overheard this statement.  Ramone broke free of Stephene, ran back down
to the end of the driveway, punched Appellant in the face, and fell into
him.  Ramone testified that he grabbed
Appellant around the waist, Agrabbing
on for [his] life.@  Appellant then shot his gun multiple times,
hitting Ramone, Stephene, and Shawno, who had run toward Appellant and Ramone
after hearing a gunshot and seeing a flash. 
Stephene and Ramone testified that after Appellant got back in his car,
went to the end of the cul-de-sac, and drove back by the house, he fired two
more shots; Shawno testified that he heard another shot as Appellant was driving
away.  Ramone was shot in the arm, Shawno
was shot twice in the left arm and once in the chest, and Stephene was shot in
his face, his shoulder, and back.  One
bullet remained in Stephene=s
lung at the time of trial.  The trial
court admitted photographs taken of the three brothers after the shooting. 

Stephene
testified that no one else at his house had a gun that evening, and the police
did not find any guns when they later interviewed witnesses and searched
Stephene=s
house. 

In
the voluntary statement that Appellant gave to the police, he stated that

$       
he
did not talk to Stephene on the telephone before driving to Stephene=s house,

 

$       
he
should not have A[gone] out there,@

 

$       
Athey attacked [him],@

 

$       
Athey kept running up
on [him],@

 

$       
when
he stepped out of the car the third time, Stephene=s brother hit him,

 

$       
he
heard a shot before he started shooting, 

 

$       
he
felt like his life was in danger, and

 

$       
he
took the gun to Stephene=s house because he Ahad a feeling [that]
something like that was going to happen.@ 








 

The
jury acquitted Appellant of committing aggravated assault with a deadly weapon
against Ramone but convicted Appellant of committing aggravated assault with a
deadly weapon against Stephene and Shawno and of possession of a firearm by a
felon.

At
punishment, the trial court admitted expert gang testimony that Appellant is or
was a member of the Crips.

Sufficiency of the Evidence








In
his first issue, Appellant challenges the legal and factual sufficiency of the
evidence supporting the jury=s
rejection of his defense of self-defense in the aggravated assault cases.  A defendant has the burden of producing some
evidence to support a claim of self‑defense.[2]  The State has the burden of persuasion in
disproving self‑defense.[3]  This burden does not require the State to
produce evidence refuting the self‑defense claim; rather, the burden
requires the State to prove its case beyond a reasonable doubt.[4]  Self‑defense is an issue of fact to be
determined by the jury.[5]  A jury verdict of guilty is an implicit
finding rejecting the defendant=s
self‑defense theory.[6]

In
reviewing the legal sufficiency of the evidence to support the jury=s
rejection of Appellant=s self-defense theory, we
examine all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense and also could have found against the defendant on the
self‑defense issue beyond a reasonable doubt.[7]

A
factual sufficiency challenge to a verdict implicitly rejecting a defense, such
as self-defense, requires us to review all of the evidence in a neutral light
and ask whether the State=s evidence, if taken alone,
is too weak to support the finding or whether the proof of guilt, although
adequate if taken alone, is against the great weight and preponderance of the
evidence.[8]

Section
9.32 of the penal code provides in relevant part,








A
person is justified in using deadly force against another . . . if the actor
would be justified in using force against the other under Section 9.31; and . .
. when and to the degree the actor reasonably believes the deadly force is
immediately necessary . . . to protect the actor against the other=s use or attempted
use of unlawful deadly force.[9]

 

Appellant
claims that he fired the gunshots as he was being physically attacked by Ramone
and Aconfronted
by several other enraged inebriated men.@  In his recorded statement, Appellant states
that Athey@
attacked him, that they Akept running up on@
him, that he felt like his life was in danger, and that he heard a shot before
he started shooting.  Yet the evidence
viewed in the light most favorable to the verdict shows that

$       
Appellant demanded that Stephene go get his
daughter,

$       
Stephene refused, and he and Appellant
argued, 

$       
Ramone joined the verbal battle,

$       
Appellant returned to his car for about three
minutes,

$       
Appellant exited his car with a gun,

$       
Ramone
got Aknee-deep in
[Appellant=s] face,@ but Stephene grabbed
Ramone and dragged him to safety, telling him that Appellant had a gun,

 

$       
The
three brothers had turned away from Appellant and were on or near the porch,

 

$       
Ramone
broke away from Stephene, punched Appellant, and fell into him, and

 

$       
Appellant
then emptied his gun into the three brothers, none of whom was armed.

 








Given
the evidence that Shawno walked away from Appellant and toward the house before
Appellant exited the car with the gun, that Stephene pulled Ramone away from
Appellant and tried to prevent a fight, that neither Stephene nor Shawno was armed,
and that Appellant shot Stephene in the back, we hold that the evidence is
legally sufficient to support the jury=s
verdict and the jury=s implicit rejection of
Appellant=s
defense of self-defense.

Likewise,
despite Appellant=s arguments that it was
reasonable to believe that Stephene and Shawno would attack him because Ramone
did, the evidence indicating that only Appellant was armed, that Stephene
retreated after seeing Ramone=s
gun, and that Shawno had retreated back to the house after he saw Appellant get
back in his car, coupled with Appellant=s
decision to leave the safety of his vehicle and escalate the battle from verbal
to deadly, justifies the jury=s
decision.  That is, we hold that the
evidence is factually sufficient to support the jury=s
verdict and implicit rejection of Appellant=s
theory of self-defense.  We overrule
Appellant=s
first issue.

Admission of Photographs of
Stephene=s Wounds








In
his second issue, Appellant challenges the admission of photographs of Stephene=s
wounds, State=s
Exhibits 1, 2, 4, 5, and 7.  First,
Appellant contends that the photographs should have been excluded under rule
403 because they were unfairly prejudicial. 
Second, he argues that the photographs had little probative value and
that the State had little need of them because the gunshot wounds were not at
issue and Stephene testified about his wounds. 
Third, Appellant argues that the photographs had a tendency to influence
the jury improperly by arousing their sympathy. 
Fourth, he argues that the graphic nature of the photographs could have
distracted the jury from determining whether he acted in self-defense.  Fifth, he contends that the jury most likely
gave the pictures undue weight, especially since they included photographs of
gunshot wounds to the face.  Sixth, he
argues that the time spent was significant in terms of its possible effects on
the jury.  At trial, Appellant objected only
that the photographs were graphic, designed to inflame the passions of the
jury, and more prejudicial than probative. 
Appellant therefore did not preserve his arguments regarding confusion
of the issues, misleading the jury, considerations of undue delay, or
presentation of cumulative evidence.[10]

Regarding
the preserved complaints, in Williams v. State, a death penalty appeal,
the Texas Court of Criminal Appeals held, 

The
photographs were introduced to assist the medical examiner in explaining the
injuries and to rebut appellant=s self‑defense
argument.  The photographs, particularly
the close‑ups of the bullet wounds, are gruesome; however, they portray
no more than the gruesomeness of the injuries inflicted by appellant.  The probative value of the evidence is not
substantially outweighed by the danger of unfair prejudice.  The trial court=s decision to admit
this evidence was within the zone of reasonable disagreement and was not an
abuse of discretion.[11]

 








Similarly,
here, the pictures of Stephene were apparently introduced to help him explain
his multiple gunshot wounds and injuries, and, whether it was the State=s
intent or not, the exhibits helped rebut Appellant=s
self-defense argument because they, along with unobjected-to testimony by
Stephene, showed that a bullet entered his back.  We have viewed the photographs.  While they are gruesome, Athey
portray no more than the gruesomeness of the injuries@
Appellant inflicted.[12]  We hold that the trial court did not abuse
its discretion by concluding that the probative value of the photographs was
not substantially outweighed by the danger of unfair prejudice or by admitting
the photographs.  We overrule Appellant=s
second issue.

Gang Testimony








In
his third issue, Appellant contends that the trial court erred by admitting
expert testimony regarding gang activity because Wafeeq Sabir, Ph.D., was not
qualified to testify as an expert and the testimony was more prejudicial than
probative.  Rule 702 of the rules of
evidence allows a witness qualified by knowledge, skill, experience, training,
or education to testify on scientific, technical, or other specialized subjects
if the testimony would assist the trier of fact in understanding or determining
a fact issue.[13]  The proponent of the witness has the burden
of proving that the witness is qualified to give an expert opinion.[14]  A person=s specialized
education, practical experience, study of technical works, or some combination
thereof may provide him with the specialized knowledge that qualifies him to
testify as an expert.[15]  With fields of study that are based primarily
upon experience and training as opposed to the scientific method, courts
determine (1) whether the field of expertise is a legitimate one; (2) whether
the subject matter of the expert=s
testimony is within the scope of that field; and (3) whether the expert=s
testimony properly relies upon and/or utilizes the principles involved in the
field.[16]  AA
trial court need not exclude expert testimony simply because the subject matter
is within the comprehension of the average jury.@[17]

We
will not disturb the trial court=s
decision to admit expert testimony absent a clear abuse of the trial court=s
discretion,[18]
and we must uphold the trial court=s
ruling if it is within the zone of reasonable disagreement.[19]  Additionally, we must review the trial court=s
ruling in light of the evidence before that court when the ruling was made.[20]








In
deciding whether a trial court has clearly abused its discretion, we may
consider several criteria, including the complexity of the field of expertise,
the conclusiveness of the expert=s
opinion, and the centrality of the area of expertise to the case:  

First, is the field of
expertise complex?  The degree of
education, training, or experience that a witness should have before he can
qualify as an expert is directly related to the complexity of the field about
which he proposes to testify.  If the
expert evidence is close to the jury=s
common understanding, the witness=s
qualifications are less important than when the evidence is well outside the
jury=s
own experience.  For example, DNA
profiling is scientifically complex; latent‑print comparison (whether of
fingerprints, tires, or shoes) is not. 
Second, how conclusive is the expert=s
opinion?  The more conclusive the expert=s
opinion, the more important is his degree of expertise.  Testimony that a given profile occurred one
time in 2.578 sextillion (2.578 followed by 21 zeroes), a number larger than
the number of known stars in the universe (estimated at one sextillion)
requires a much higher degree of scientific expertise than testimony that the
defendant=s
tennis shoe could have made the bloody shoe print found on a piece of paper in
the victim=s
apartment.  And third, how central is the
area of expertise to the resolution of the lawsuit?  The more dispositive it is of the disputed
issues, the more important the expert=s
qualifications are.  If DNA is the only
thing tying the defendant to the crime, the reliability of the expertise and
the witness=s
qualifications to give his opinion are more crucial than if eyewitnesses and a
confession also connect the defendant to the crime.[21]








At
the rule 705 hearing,[22]
Sabir testified that he had been with the Fort Worth Police Department Gang
Unit for seventeen years.  He testified
that he has familiarity with gangs and gang activity in Fort Worth through his
work in the gang unit as an enforcement officer and intervention officer.  He has attended in-house education and
conferences throughout the nation on gang activity.  He also has delivered presentations on gangs
each year to law enforcement organizations and at conferences.  He testified that he has experience in identifying
members of criminal street gangs through the examination of tattoos and other
characteristics.  He has also previously
testified in Tarrant County on the subject of gangs and gang membership.

Sabir=s
testimony in the hearing described his years of professional experience and
training, and he testified that his opinion that Appellant is or was a Crip was
based on his experience with gangs, Appellant=s
admissions to unknown contact officers, photographs of Appellant, and Appellant=s
tattoo exhibiting Aa gangster throwing up a C@ and
headstones and a graveyard.  In light of
the evidence at the time of the rule 702 ruling, we hold that the trial court
did not abuse its discretion by determining that Sabir was qualified to testify
as an expert.[23]


Regarding
Appellant=s
rule 403 objection, article 37.07, section 3(a) of the code of criminal
procedure provides,








Regardless
of the plea and whether the punishment be assessed by the judge or the jury,
evidence may be offered by the state and the defendant as to any matter the
court deems relevant to sentencing, including but not limited to the prior
criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he
is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of
Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of whether he
has previously been charged with or finally convicted of the crime or act.[24]

 

In
the punishment phase, evidence is relevant if it helps the jury determine the
appropriate punishment for a particular defendant in a particular case.[25]  In punishment, then, admissibility of
evidence is more a matter of policy than of Alogical
relevance.@[26]  A defendant=s
choice of tattoos can reflect his character,[27]
as can his gang membership.[28]








But
under rule 403, otherwise relevant punishment evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice.[29]  Factors considered in our analysis of an
issue regarding rule 403 are (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the
time needed to develop the evidence; and (4) the proponent=s
need for the evidence.[30]

Sabir
testified that based on his training and experience and after reviewing the
State=s
exhibits, including State=s Exhibit 52, a photograph
of Appellant with a tattoo exhibiting Aan
individual with a bandana wrapped around . . . the head end of [his] face and
[he is] throwing up . . . what would be a C for Crip,@ he
was of the opinion that Appellant is or was a member of the Crips.  On cross-examination, Sabir testified that
Appellant was a member of the Crips A[s]ometime
during the year 2004.@








Sabir=s
testimony took very little time to develop, alluded to Ramone=s
testimony about Appellant=s warning about Agangster
shit@
before he shot the three brothers, and responded to the testimony of Appellant=s
family members that he was not a member of a gang and had never hung out on the
street, that he was not violent, that he was a peaceful person, and that it was
out of character for him to carry a gun.[31]  Finally, on the aggravated assaults, the jury
sentenced Appellant to thirty years=
confinement on one count and twenty years=
confinement on the other count when, because of the enhancements, he faced up
to ninety-nine years or life,[32]
and the State had argued for fifty years=
confinement on each.  We therefore cannot
conclude that the evidence that Appellant was or is a Crip affected the jury in
an irrational way.  Based on our analysis
of all the rule 403 factors, we cannot say that the trial court abused its
discretion by admitting Sabir=s
testimony.[33]  We overrule Appellant=s
third issue.

Conclusion

Having
overruled Appellant=s three issues, we affirm
the trial court=s judgments.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 29, 2010











[1]See Tex. R. App. P.
47.4.





[2]Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003).





[3]Saxton v. State, 804 S.W.2d 910, 913
(Tex. Crim. App. 1991).





[4]Id.





[5]Id. at 913B14.





[6]Id. at 914.





[7]Id.





[8]Zuliani, 97 S.W.3d at 594B95; Walker v.
State, 291 S.W.3d 114, 118 (Tex. App.CTexarkana 2009, no pet.).





[9]Tex. Penal Code Ann. ' 9.32(a) (Vernon
Supp. 2009).





[10]See Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied,
526 U.S. 1070 (1999).





[11]301 S.W.3d 675, 693
(Tex. Crim. App. 2009) (citation omitted).





[12]See id.





[13]Tex. R. Evid. 702.





[14]Wyatt v. State, 23 S.W.3d 18, 27
(Tex. Crim. App. 2000).





[15]Id.





[16]Nenno v. State, 970 S.W.2d 549, 561
(Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas,
4 S.W.3d 720, 727 (Tex. Crim. App. 1999).





[17]Rodgers v. State, 205 S.W.3d 525, 527
(Tex. Crim. App. 2006).





[18]Nenno, 970 S.W.2d at 561.





[19]Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000).





[20]Wyatt, 23 S.W.3d at 27.





[21]Id. at 528 (footnotes
and quotations omitted).





[22]See Tex. R. Evid.
705(b).





[23]See, e.g., Hernandez
v. State,
No. 03-04-356-CR, 2006 WL 191918, at *3B5 (Tex. App.CAustin Jan. 26, 2006,
pet. ref=d) (mem. op., not
designated for publication) (upholding trial court=s decision that
police sergeant and deputy sheriff qualified as gang experts).





[24]Tex. Code Crim. Proc.
Ann. art. 37.07, ' 3(a) (Vernon Supp.
2009).





[25]Ellison v. State, 201 S.W.3d 714, 719
(Tex. Crim. App. 2006).





[26]Id.





[27]See Conner v. State, 67 S.W.3d 192, 201
(Tex. Crim. App. 2001).





[28]Jones v. State, 944 S.W.2d 642, 653
(Tex. Crim. App. 1996) (noting that evidence of gang membership is relevant to
show character), cert. denied, 522 U.S. 832 (1997).





[29]Tex. R. Evid. 403; Rogers
v. State, 991 S.W.2d 263, 266B67 (Tex. Crim. App. 1999). 





[30]Reese v. State, 33 S.W.3d 238, 240B41 (Tex. Crim. App.
2000).





[31]See Dean v. State, Nos. 02-07-287-CR,
02-07-288-CR, 02-07-289-CR, 2008 WL 4831390, at *7 (Tex. App.CFort Worth Nov. 6,
2008, pet. ref=d) (mem. op., not
designated for publication) (contrasting challenged testimony with testimony of
Dean=s relatives).





[32]See Tex. Penal Code Ann. '' 12.33(a), 12.42(b),
22.02(b) (Vernon Supp. 2009).





[33]See Reese, 33 S.W.3d at 240B41.