**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00043-CR**
_____

**DAVID KENNETH LOCY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-04-05315-CR**

**MEMORANDUM OPINION**

Appealing his conviction for possessing less than four grams of methampthetamine (meth), a third-degree felony, David Kenneth Locy seeks to overturn the judgment on three alleged errors that he claims occurred in the guilt-

innocence and punishment phases of his trial.[1] Because the issues Locy raises were either not properly preserved for our review or without merit, we affirm.

## Issues

Locy raises three issues in his appeal. In his first issue, Locy argues the trial court erred when it allowed a special agent, employed by the police, to explain how Locy violated a contract he made with a special agent to develop more drug trafficking cases to get the case that resulted in the charge now at issue dismissed. According to Locy, admitting the evidence about how he violated the contract allowed the prosecutor to introduce evidence about what he argues are other crimes, wrongs, or acts, thereby violating Rule 404(b) of the Texas Rules of Evidence.[2]

In his second issue, Locy raises another evidentiary issue. In it, he complains the trial court erred when it allowed the state trooper that arrested him on the possession charge to answer the prosecutor's question about whether a person would become intoxicated on more or less than one gram of meth. This alleged error occurred in the punishment phase of Locy's trial.

Locy's third issue also concerns an alleged evidentiary error. The evidence that is the subject of the complaint also came in during punishment. According to

---

[1] *See* Tex. Health & Safety Code Ann. § 481.115(c).

[2] Tex. R. Evid. 404(b).

Locy, the contract he made with the police contains his confession for possessing meth in an amount that exceeded four grams. Yet, the State's evidence showed the meth, when tested in the Department of Public Safety's crime lab, weighed less than four grams. Locy argues the fact the contract shows he committed a greater crime[3] made admitting it more prejudicial than probative on issues relevant to his punishment.[4]

## Background

The testimony from the trial shows that in September 2017, a state trooper saw Locy violate a Texas traffic law governing the visibility requirements that apply to a car's license plate. After the trooper pulled Locy over, he asked Locy if he could search Locy's car. Locy agreed. During the search, the trooper found two baggies that contained what the officer believed was meth. The trooper arrested Locy for possessing the contraband in the baggies taken from Locy's car.

A special agent, who Locy talked to about five days after he was arrested, reached an agreement with Locy that Locy would assist the special agent develop additional cases relevant to drug trafficking in Montgomery County in exchange for the District Attorney's promise to dismiss the charges stemming from Locy's arrest.

---

[3] *See* Tex. Health & Safety Code Ann. § 481.115(d).

[4] Tex. R. Evid. 403.

3

According to the special agent, when Locy signed the informant contract, he thought the meth in the baggies weighed four or more grams based solely on what the trooper told him the baggies weighed after the trooper weighed them in the field. Consequently, the weight the special agent used for the baggies was 4 to 200 grams, which was more than the baggies had in them when the meth was later tested in the lab. Since the special agent did not have the benefit of the lab report, the informant contract states the baggies contain "4g<200g" grams of meth.

In this case, no one disputes the special agent did not have the benefit of the lab report when he and Locy negotiated the terms of the informant contract. And no dispute exists about the fact that the lab weighed the meth and found it to weigh 3.71 grams.

Another of the provisions in Locy's informant contract is relevant to the third issue in Locy's appeal. The contract provides the district attorney with the right to terminate Locy's informant contract should Locy violate another law. Ultimately, the District Attorney invoked that clause, revoking Locy's contract when Locy failed to appear for a hearing scheduled by the court. The special agent testified that, by missing the hearing, Locy violated the terms of a bond he posted to get out of jail, became a fugitive from justice, and the State issued a warrant that it executed resulting in Locy's arrest.

In April 2018, the State chose to move forward on Locy's meth case. It presented the case to a grand jury, which indicted Locy for possessing meth "in an amount of one gram or more but less than 4 grams[.]" The indictment includes enhancement paragraphs, which subjected Locy to an increased penalty based on his two previous convictions for felonies.

In June 2018, Locy's case for possessing meth went to trial. After the parties selected a jury, Locy advised the court that he intended to object when the prosecutor offered Locy's informant contract into evidence. Locy argued that by admitting the contract, the court violated Rule 404(b)[5] because the contract referenced the weight the trooper found in the field. The prosecutor responded, arguing he would introduce evidence to explain how the discrepancy occurred. After the prosecutor gave the court the background we have described, the trial court advised it would allow the evidence based on the prosecutor showing how the discrepancy occurred, and it overruled Locy's objection.

Three witnesses, including the special agent, testified in the guilt-innocence phase of Locy's trial. The informant contract is among the exhibits admitted into evidence in the trial. When the prosecutor asked the special agent if Locy violated

---

[5] Tex. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

5

the contract, Locy objected, arguing the evidence was inadmissible under Rule 404(b).[6] The trial court overruled the objection, and the special agent responded "Yes[.]" Shortly after that, the prosecutor approached the bench and explained to the court that he wanted the special agent to explain how the contract had been breached. During the bench conference, the following discussion, which is relevant to the complaints Locy raises in his third issue, occurred:

> [PROSECUTOR]: . . . I think we're about to get into a question about did he bond forfeiture, is that another reason why the contract was revoked. And I believe [Locy's attorney] would have an objection to that, so I wanted to approach before we asked that question and got that out there if there is going to be an objection.
>
> [LOCY'S ATTORNEY]: I think what I hear you saying is you're going to say the contract was breached because he missed his court date?
>
> [PROSECUTOR 1]: Right.
>
> [LOCY'S ATTORNEY]: Is that all?
>
> [PROSECUTOR 2]: Well, he's a fugitive for a period of days.
>
> [PROSECUTOR 1]: And had a warrant out, and he got arrested in Woodville.
>
> [LOCY'S ATTORNEY]: Well, the warrant was a result of basically the court date.
>
> [PROSECUTOR 1]: Right.
>
> [LOCY'S ATTORNEY]: We'll stipulate to that if that's all he wants.

---

[6] Tex. R. Evid. 404(b) (Crimes, Wrongs, or Other Acts).

THE COURT: I'll allow him to ask those questions.

After the bench conference, the special agent testified before the jury that Locy had violated the contract by failing to appear at a hearing he was supposed to attend in court. The special agent also explained that, based on Locy's failure to appear for the hearing, a warrant issued for Locy's arrest. According to the special agent, after the warrant issued, Locy was "a fugitive for a certain period of time[.]" The police arrested Locy on the warrant after stopping Locy for violating a traffic law.

The guilt-innocence phase of the trial ended when the jury found Locy guilty of possessing between one and four grams of meth.[7] Then, the case moved to punishment. In the punishment phase of the trial, the jury found that Locy should serve a 90-year sentence.[8] The trial court, however, later granted Locy's motion for new trial. Locy's motion asserted that the jury, based on similarly situated defendants, had given him a disproportionate sentence. As a result, the trial court later empaneled a new jury for the purpose of conducting a second punishment trial.

---

[7] *See id.* § 481.115(c). We note the jury found both enhancement paragraphs of the indictment to be true.

[8] Locy pleaded true to both enhancement paragraphs, which enhanced the available range for his punishment from 25 to 99 years in prison, or life. *See* Tex. Penal Code Ann. § 12.42(d).

Five witnesses, including the special agent and the trooper that arrested Locy, testified in Locy's second trial. The prosecutor asked the trooper in the second trial on punishment: "[D]o you know how much meth you have to do, like, in weight amount to get high?" The trooper answered, "I don't." Then, the prosecutor asked: "Do you know if it's more or less than a gram?" The trooper responded, "[l]ess than a gram." At that point—which was immediately after the trooper responded—Locy objected, arguing the trooper had "already expressed he has no knowledge of that." The trial court overruled the objection.

The prosecutor offered the informant contract into evidence in the second punishment trial. In the trial, Locy argued the informant contract should not be admitted into evidence because it was overly prejudicial given the discrepancy that existed about what the documents showed the meth weighed.

When the punishment trial ended, the second jury found Locy should serve a 45-year sentence.[9] Subsequently, the trial court signed a judgment, carrying out the relevant findings on guilt and punishment.

---

[9] In the second punishment trial, the trial court instructed the jury that Locy pleaded true to the enhancement paragraphs as set out in the indictment, the jury had to find the enhancement paragraphs to be true, and the jury could "assess the punishment for the defendant for any term of years not less than Twenty-Five (25) nor more than Ninety-Nine (99), or for Life (Life)." *See id.*

Standard of Review

We review complaints about rulings admitting or excluding evidence in a trial using an abuse-of-discretion standard.[10] Under that standard, trial courts have the authority to admit evidence unless the ruling admitting the evidence "lies outside the zone of reasonable disagreement."[11] Thus, evidentiary rulings admitting or excluding evidence will not be overturned upon appeal if the ruling made is sustainable under any theory of law that applies to the defendant's case.[12]

Analysis

*Challenge to the ruling admitting the special agent's testimony about how Locy violated the informant contract*

In his first issue, Locy challenges the trial court's ruling admitting the special agent's testimony explaining why Locy violated the terms of his contract. According to Locy, the special agent's testimony, which was admitted in the guilt-innocence phase of the trial, alludes to extraneous bad acts such as jumping bail. He claims the evidence was derogatory to his character.[13] Before reaching the merits of this

---

[10] *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

[11] *See id.*

[12] *Henley v. State,* 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

[13] *See* Tex. R. Evid. 404(b)(1).

argument, however, we must determine if Locy preserved his right to complain about the alleged error in his appeal. As explained earlier, his attorney stipulated that Locy breached his contract after he failed to appear for a hearing and that as a result, a warrant had issued authorizing Locy's arrest.[14] In its brief, the State points out that Locy failed to object to the special agent's testimony about the breach in the trial.

The record shows the prosecutor's questions about the circumstances of the breach did not go beyond the stipulation that Locy made with the prosecutor about the evidence during the discussion that occurred at the bench. Therefore, Locy cannot now complain about the trial court's ruling admitting the testimony when the record shows he did not lodge an objection to the testimony in the trial.[15] Since the alleged error was not properly preserved for our review, it is overruled.

*Challenge to the ruling admitting the trooper's opinion it would*
*take less than one gram of meth to get high*

In issue two, Locy complains about the admission of the state trooper's testimony during punishment that it would take "less than a gram" of meth to make

---

[14] Tex. R. App. P. 33.1 (setting out the requirements for preserving complaints relevant to an appeal).

[15] *See* Tex. R. App. P. 33.1 (preserving error for appellate review requires the complaining party to show that he made a timely request, objection, or motion in the trial court and that the court ruled on the request); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (explaining that the "point of error on appeal must comport with the objection made at trial").

10

a person high. According to Locy, the trooper's opinion was unreliably speculative. To support his argument, Locy points to the trooper's earlier testimony in the second punishment trial where the trooper told the prosecutor he did not know how much meth a person would need to "do" to "get high."

But we must determine whether the trooper was qualified to express an opinion phrased in terms of more or less than a stated weight since that was the question that is the subject of the objection Locy raised in the trial. And, we must decide whether the trooper's negative answer to the first question, whether the trooper knew how much meth it takes to make a person high, shows the trooper did not know whether it would take more or less than one gram.

It is apparent to us that the two questions ask materially different questions. While the trooper's testimony about his experience did not qualify him to testify about the exact weight it would take to make a person high, the trial court could have viewed the question—was it more or less than a gram—as asking a much less precise question, the effect of taking a given amount of meth. The Rules of Evidence allow juries to consider testimony of a layman if the opinion being offered is (1) rationally based on the witness's own experiences and observations and (2) helpful to

11

understanding the witness's testimony or determining a fact issue.[16] The State relies on this rule in its brief, and argues the testimony was admissible as lay opinion testimony.

Like other evidence, questions surrounding the admissibility of lay opinion are reviewed using an abuse-of-discretion standard.[17] So, in reviewing complaints about rulings admitting lay opinion testimony, the trial court's ruling will not be overturned unless the trial court's ruling falls outside the zone of reasonable disagreement.[18] Here, the trooper testified he had "a lot" of experience dealing with citizens after they had taken meth. And he explained he has been trained to detect whether an individual has taken an illegal substance.

The trial court could have perceived the first question about how much it would take to make a person high as calling for a specific response about the exact weight in grams of meth. The trooper answered that question, "I don't." But that question does not rule out whether the trooper knew whether a stated amount, one gram, would be enough meth to make most people high.

---

[16] *See* Tex. R. Evid. 701; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002).

[17] *Rodgers v. State*, 205 S.W.3d 525, 533 (Tex. Crim. App. 2006).

[18] *See Patterson v. State*, 508 S.W.3d 432, 435 (Tex. App.—Fort Worth 2015, no pet.).

12

An analogy might be helpful. A lay witness, otherwise qualified to testify about intoxication, might answer he did not know precisely how many beers it would take to make an average person drunk. Yet, the same trooper could still possess sufficient experience dealing with drunks to know that drinking a six-pack over a short period of time is more than enough for most. While the question is close, we agree with the State that the ruling admitting the trooper's response to the second question is a matter that falls in the zone of reasonable disagreement. As such, allowing the trooper to answer was not an abuse of discretion.

We hold the ruling concerns a matter about which reasonable judges could disagree. Consequently, Locy's second issue is overruled.

*Challenge to the ruling admitting Locy's contract*

In Locy's third issue, he argues that in the punishment trial, the trial court abused its discretion by admitting the informant contract into evidence. According to Locy, the contract is more prejudicial than probative because it references a weight of contraband higher than the weight in the baggies as later determined by the crime lab.

13

Generally, evidence is admissible when it is relevant to the facts that are at issue in a defendant's trial.[19] In punishment, juries are asked to return a verdict that decides the defendant's sentence.[20] Speaking generally, evidence relevant to the jury's normative decision-making process in deciding a defendant's punishment includes the circumstances surrounding the defendant's crime.[21]

Much of the evidence admitted in punishment trials is no doubt prejudicial to one of the parties. But the fact that it is prejudicial is not sufficient to make the evidence inadmissible. Instead, to be inadmissible, the evidence must be *unfairly* prejudicial.[22] To determine whether evidence is unfairly prejudicial to a party, trial courts must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

[19] *See* Tex. R. Evid. 401 (explaining that evidence is relevant when "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"); Tex. R. Evid. 402 (explaining that generally, relevant evidence is admissible, while irrelevant evidence is not).

[20] *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006).

[21] Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Supp.).

[22] *See* Tex. R. Evid. 403.

14

evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[23]

Generally, relevant evidence is presumed to be more probative than prejudicial.[24]

During punishment, Locy objected when the prosecutor asked to admit the informant contract, claiming that admitting it was unfairly prejudicial based on the discrepancy between the weight referenced in the contract for the meth and the amount the crime lab determined the contraband weighed when testing the baggies' contents in the lab. Here, as we have explained, the trial court dealt with the objection by directing the prosecutor to have the special agent clarify why the discrepancy occurred.

The record shows the prosecutor asked the special agent a question designed to explain the discrepancy in the different weights for the meth. The explanation the special agent offered shows the discrepancy occurred because the special agent did not have the benefit of the lab report and had relied on the information the trooper gave him when negotiating the terms that were in Locy's contract. Locy never complained in the trial that the special agent's explanation failed to meet the

---

[23] *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

[24] *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

conditions the trial court placed on admitting the contract.[25] Finally, we note that when the court admitted the contract, the lab report was already in evidence. Thus, the jury also would have already known the lab reported the baggies contained 3.71 grams of meth.

We evaluate rulings that a party challenges under Rule 403 "in view of all relevant facts."[26] When viewed in context, nothing in the record shows the jury would have any reason to rely on the trooper's reported weight for the meth. And none of the attorneys for the parties ever argued that Locy had more than 3.71 grams of meth in his car. Thus, the jury could not have been confused by the fact a discrepancy in weights exists between the two documents the trial court admitted during Locy's trial.

Under the circumstances, the discrepancy amounts only to evidence relevant to the circumstances of Locy's crime—the trooper, for some reason, obtained a weight for the meth that was greater than the one Locy actually possessed. The trial court could have concluded that, as background evidence, the contract was not unduly prejudicial given the explanation the jury heard in the trial and given the

---

[25] *See* Tex. R. Evid. 104(b) (Relevance That Depends on a Fact).

[26] *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006) (cleaned up).

jury's right to decide whether the weight the trooper obtained should be weighed when the jury assessed the trooper's credibility. While the ruling could have gone either way, the decision to admit it falls in the zone of reasonable disagreement.[27] We hold no abuse of discretion has been shown after examining the record as a whole. For that reason, Locy's third issue is overruled.

## Conclusion

On issue one, we hold Locy failed to properly preserve his argument for our review. As to issues two and three, we conclude Locy's arguments are without merit because no abuse of discretion in admitting the evidence that Locy challenges occurred. The judgment of the trial court is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 31, 2019
Opinion Delivered January 8, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[27] *See* Tex. R. Evid. 403; *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009).