# NO. 12-20-00078-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CEDARRIUS BLAKE,* *APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Cedarrius Blake appeals his conviction for murder. In two issues, he argues that the trial court abused its discretion by excluding his proffered expert opinion testimony that he did not pose a substantial risk for engaging in future violent crimes and that he would likely have a favorable response to rehabilitative programs. We affirm.

### BACKGROUND

Appellant and the victim had a wavering romantic relationship for several years.[1] On December 24, 2018, Appellant went to the victim's residence and discovered her having sex with another man. The couple argued and Appellant left. A short time later that day, Appellant met with the victim to return his key to her home. At that time, the victim called Appellant by the name of a different lover. Angered by this, Appellant shot the victim several times, and she died as a result.

Appellant was arrested and indicted for murder. He pleaded "guilty" to the offense. During the ensuing jury trial on punishment, Appellant attempted to offer expert opinion testimony from psychologist Dr. Sydney Kroll. Outside the presence of the jury, Dr. Kroll opined that Appellant's

---

[1] Appellant was fifteen years old at the time he began his relationship with the victim, who was twenty-three years old.

risk for committing future violent crimes was low and that he would have a favorable response to rehabilitative programs.  However, the trial court excluded this testimony.  The jury sentenced Appellant to seventy years of imprisonment.  This appeal followed.

**EXPERT TESTIMONY**

In Appellant's first and second issues, he contends that the trial court abused its discretion in excluding Dr. Kroll's testimony that Appellant did not pose a substantial risk for engaging in future violent crimes and that he had a favorable response to rehabilitative programs.  Because these issues are related, we address them together.

## Standard of Review

We review a trial court's decision to exclude evidence for an abuse of discretion.  *See Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *see also Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (standard of review for punishment evidence is abuse of discretion); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (admissibility of expert testimony is reviewed under abuse of discretion standard).  A trial court abuses its discretion when it lies outside the zone of reasonable disagreement.  *See Hernandez*, 390 S.W.3d at 324.  An appellate court misapplies the abuse of discretion standard by reversing a trial court's admissibility decision solely because it disagrees with it.  *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006).  The trial court is usually in the best position to decide whether evidence should be admitted or excluded.  *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

## Applicable Law

Admissibility of evidence at the punishment phase of a non-capital trial is a function of policy, not a question of logical relevance.  *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006).  Relevancy in this context is a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.  *Id.*

In 1983, the Court of Criminal Appeals held that evidence of future dangerousness "does not come within the gambit of permissible testimony at the punishment stage of a non-capital case."  *Reed v. State*, 644 S.W.2d 479, 481 (Tex. Crim. App. 1983), *superseded on other grounds by*, TEX. R. EVID. 702.  However, that holding was based on a prior version of Texas Code of Criminal Procedure Article 37.07.  *See Lopez v. State*, No. 14-15-00668-CR, 2016 WL 7234478,

at *4–5 (Tex. App.—Houston [14th Dist.] Dec. 13, 2016, no pet.) (mem. op., not designated for publication) (discussing evolution of Texas law on this subject).

That statute has since been amended, which in relevant part, provides that during the punishment phase of trial, "evidence may be offered by . . . the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07(a)(1) (West Supp. 2020).

Accordingly, Texas courts have more recently held that evidence of future dangerousness and propensity for future criminal acts is not per se inadmissible during the punishment phase of the trial. *See, e.g., Peters v. State*, 31 S.W.3d 704, 722–23 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that trial court reversibly erred in excluding expert defense evidence concerning recidivism rates and likelihood of reoffending); *Lopez*, 2016 WL 7234478, at *4–5. Moreover, Texas courts have also held that such evidence is not necessarily objectionable based on the mere fact that it embraces the ultimate issue for the jury. *See e.g.*, *Sanchez v. State*, No. 01-14-00809-CR, 2015 WL 7455782, at *7 (Tex. App.—Houston [1st Dist.] Nov. 24, 2015, pet. ref'd) (mem. op., not designated for publication) (holding expert testimony on suitability for probation and recidivism was admissible sentencing evidence under Article 37.07 even though it embraced ultimate issue of appropriate sentence for jury, and failure to object to it could not support ineffective assistance of counsel claim); *see also* TEX. R. EVID. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). A particular defendant's likely response to rehabilitation efforts is a related issue that may be relevant to his sentencing that could be admissible in appropriate cases. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07(a)(1).

The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Texas Rule of Appellate Procedure Rule 44.2(b), unless the excluded evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). Under the latter scenario, exclusion of the evidence is not prejudicial if the defendant was not prevented from presenting the substance of his defense to the jury. *Potier*, 68 S.W.3d at 665. When the error is non-constitutional, Rule 44.2(b) requires that we disregard the error, defect, irregularity, or

variance that does not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b). An error affects an accused's substantial rights "when the error had a substantial and injurious effect or influence in determining the jury's verdict." ***King v. State***, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not overturn a criminal conviction for non-constitutional error if we have fair assurance that the error did not influence the jury or had but a slight effect. ***Barshaw v. State***, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011).

**Discussion**

Neither party challenged Dr. Kroll's qualifications as a psychologist or otherwise asserted that her testimony was unreliable. In other words, the parties and trial court agreed that Dr. Kroll's testimony generally met the recognized standards for admissibility under Texas law. *See **Rhomer v. State***, 569 S.W.3d 664, 676 (Tex. Crim. App. 2019) (citing ***Nenno v. State***, 970 S.W.2d 549, 560–61 (Tex. Crim. App. 1998); ***Kelly v. State***, 824 S.W.2d 568, 572–73 (Tex. Crim. App. 1992)).

However, the parties dispute the permissible scope of her testimony. After a ***Daubert*** hearing, the trial court issued a detailed ruling authorizing Dr. Kroll to testify, in relevant part, as to recognized risk factors for engaging in future criminal behavior and violent crime as accepted with the field of psychology, but not to directly opine as to Appellant's likelihood of future criminal conduct or particularized risk ratings. Similarly, the trial court authorized Dr. Kroll to testify as to recognized factors to determine an offender's responsiveness to rehabilitative programs as accepted within the field of psychology, but not to opine on Appellant's specific likelihood of a favorable or unfavorable response to rehabilitative programs. Appellant argues that the trial court abused its discretion when it ruled that Dr. Kroll could not opine on these matters. In accordance with cases like ***Peters***, ***Lopez***, and ***Sanchez***, it appears that such evidence is admissible. *See **Peters***, 31 S.W.3d at 722–23; ***Lopez***, 2016 WL 7234478, at *4–5; ***Sanchez***, 2015 WL 7455782, at *7.

However, assuming without deciding that this evidence should have been admitted, Appellant was not harmed by the trial court's decision to exclude it. That is, its exclusion did not prevent Appellant from presenting his defensive issue and did not influence the jury or had at most a slight effect. *See **Barshaw***, 342 S.W.3d at 93-94; ***Potier***, 68 S.W.3d at 665; ***King***, 953 S.W.2d at 271.

This Court, in evaluating similar evidence, has held that when the trial court admits the underlying psychological testimony that would allow the jury to infer that the defendant was not

4

likely to commit future violent acts, he is not harmed when the direct opinion on the matter is excluded. *See, e.g.,* ***Tiede v. State***, No. 12-99-00182-CR, 2002 WL 31618281, at *8-9 (Tex. App.—Tyler Nov. 20, 2002, pet. ref'd) (op. on remand, not designated for publication). In ***Tiede***, a well-known case involving the murder of a wealthy widower by a former funeral home director who became her close companion and assistant, the defendant sought admission of a psychologist's testimony regarding his mental condition at the time of the offense and his risk of future dangerousness. *Id.* The trial court allowed the psychologist to testify about clinical disorders in general during the punishment phase but excluded his direct opinion about the defendant's future dangerousness. *Id.* at *9. The psychologist was permitted to discuss the defendant's mental state at the time he interviewed him, his relationship with the victim, and his depression and dissociative episodes. *Id.* The psychologist also explained disassociation and how a funeral director such as the defendant could easily develop it. *Id.* We held that "[t]he jury could easily put all this evidence together and consider the possibility that Appellant was experiencing dissociation in the nine months after the murder," and that since evidence of his dissociation was before the jury, he was not prevented from presenting his defensive issue on the matter. *Id.*

Similarly, the trial court in ***Tiede*** did not allow the psychologist's testimony that the defendant would not pose a future threat or danger to inmates, prison guards, or anyone else in the prison system. *Id.* We held that the jury could look to numerous factors that could lead it to the same conclusion that the defendant was not a future danger, such as the close, yet tumultuous relationship he had with the deceased, his lack of a prior criminal record, and his character witnesses testifying as to his good character and having a generous, kind, and compassionate disposition. *Id.* Specifically, we held that "[t]aking all these facts together, the jury might have believed this was a unique situation and that, in the absence of exact duplication of the situation, [the defendant] would not necessarily commit dangerous acts in the future," and that accordingly, he was not prevented from presenting his defensive theory on the issue, nor was he harmed by its exclusion. *Id.*

Like the testimony in ***Tiede***, the trial court here admitted testimony that could have easily allowed the jury to conclude that Appellant had a low risk of future violent criminal conduct and that he would respond favorably to rehabilitation programs. During the punishment trial, the trial court permitted Dr. Kroll and Tammy Axelson, a licensed master social worker who evaluated Appellant and made a mitigation report, to testify extensively about their evaluations of Appellant,

his mental health history and traumatic childhood experiences, and recognized psychological conditions and factors to determine an offender's risk in engaging in future criminal behavior and likelihood of favorable response to rehabilitation. Although the trial court excluded the conclusion as it specifically applied to Appellant, Dr. Kroll's and Axelson's testimony provided the jury with substantial insight to let the jury make its own informed decision regarding these matters as applied to Appellant in deciding an appropriate sentence to assess.

Dr. Kroll testified that she consulted Axelson in evaluating Appellant. Axelson testified concerning the extensive social history she conducted on Appellant as part of her mitigation report. Axelson testified that she provided Appellant with an Adverse Childhood Experiences test, which revealed that Appellant suffered from numerous traumatic childhood events. She testified that such experiences are associated with attachment problems, criminality, mental health delays, and substance abuse. However, Axelson testified that among the one percent of children exposed to the severest forms of violence, eighty percent do not grow up to be violent adults. Axelson demonstrated that her evaluation was supported by objective data, including among other evidence, her review of interviews of Appellant and his family members, a review of his school records, criminal records, and his mother's counseling records.

Dr. Kroll was permitted to testify that after evaluating Appellant, she diagnosed him with persistent depressive disorder and cannabis use disorder, the latter of which was in full remission due to his incarcerated status. She testified that she also evaluated Appellant for psychopathy, and that he tested negative in that regard. She explained that psychopaths' brains and neurology are different from that of a normal person, and that psychopaths generally have a higher risk to commit future crimes and would not likely respond favorably to rehabilitative efforts. Dr. Kroll explained factors which suggest a non-psychopathic offender may respond to rehabilitation, such as the ability to recognize the cause of his behavior, accept the consequences of his behavior, and acknowledge his behavior and guilt, all of which Appellant exhibited. Dr. Kroll also testified how an offender's brain development could be stunted after various childhood traumatic events, like the events experienced by Appellant, which could have hampered his impulse control. The jury could have easily inferred that Appellant's history did not necessarily determine his criminal conduct as an adult, that this incident was an isolated event, and that he would respond favorably to rehabilitation programs. Accordingly, Appellant has not shown that he suffered harm resulting from the exclusion of Dr. Kroll's conclusion, as applied directly to him, that he would be unlikely

6

to commit future violent criminal acts or that he would respond favorably to rehabilitation efforts. *See* *id.*

Appellant's first and second issues are overruled.

## DISPOSITION

Having overruled Appellant's two issues, the judgment of the trial court is ***affirmed***.

GREG NEELEY
Justice

Opinion delivered October 6, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 6, 2021

NO. 12-20-00078-CR

**CEDARRIUS BLAKE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2018-0294)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*